## A97A2411. IN THE INTEREST OF A. C., a child.
(496 SE2d 752)

JOHNSON, Judge.

Michelle Hanson challenges the termination of her parental rights, asserting there was insufficient evidence to support a finding that her child, A. C., was deprived, that the deprivation was caused by a lack of parental care and control, that the deprivation is likely to continue, and that the continued deprivation is likely to cause seri-

ous physical, mental, emotional or moral harm to the child. She also contends that the form of the juvenile court's order failed to comply with the statutory requirements necessary to terminate her rights in the child.

1. In March 1996, the Fayette County Department of Family & Children Services was contacted by A. C.'s paternal grandmother who reported that Hanson had left A. C., then approximately six weeks old, with her. The grandmother stated that she was unable to care for the child and asked DFCS to take custody of A. C. Hanson was incarcerated at that time, and the whereabouts of the father were unknown. DFCS was awarded temporary legal custody of A. C. and placed the child with a paternal aunt and her husband with whom the child still resides. Shortly thereafter, Hanson moved away without telling DFCS her whereabouts.

DFCS developed 30-day reunification plans for Hanson and A. C.'s father, which required establishment of a safe and stable home for A. C., that they remain drug- and alcohol-free, seek counseling for their drug problems, visit A. C. on a regular basis, abide by all laws, resolve any outstanding criminal matters, and seek stable employment. A. C.'s father surrendered his parental rights to the child on February 18, 1997. Following Hanson's failure to comply with the terms and conditions of the case plan and various orders of the juvenile court, DFCS filed a termination petition on April 15, 1997. A termination hearing was held on June 3, 1997. The court heard testimony from the child's DFCS caseworker, Hanson, and A. C.'s father. Based on the evidence presented at the hearing and prior orders entered in the case, the juvenile court terminated Hanson's parental rights by written order entered June 13, 1997.

"The standard of review of a juvenile court's decision to terminate parental rights is whether after reviewing the evidence in the light most favorable to the appellee, any rational trier of fact could have found by clear and convincing evidence that the natural parent's rights to custody have been lost." (Citations and punctuation omitted.) *In the Interest of E. C.*, 225 Ga. App. 12, 13 (482 SE2d 522) (1997). After examining the evidence in this light, we conclude that there is sufficient clear and convincing evidence in this case for a rational factfinder to determine that Hanson's parental rights should be terminated and that such termination is in A. C.'s best interest.

OCGA § 15-11-81 (a) delineates a two-step procedure to be followed in termination of parental rights cases. The trial court must first determine whether there is present clear and convincing evidence of parental misconduct or inability. This conduct or inability may be proved by showing: (1) that the child is deprived; (2) such deprivation is caused by the lack of proper parental care or control by the parent in question; (3) the deprivation is likely to continue; and

(4) the continued deprivation will cause or is likely to cause serious physical, mental, emotional, or moral harm to the child. OCGA § 15-11-81 (b) (4) (A) (i)-(iv). Hanson concedes that she is precluded from contesting the legal effect of a prior deprivation order which was not appealed, satisfying the first criterion above. See *In the Interest of C. D. F.*, 222 Ga. App. 905, 907 (1) (476 SE2d 654) (1996).

In determining whether a child is without parental care and control, OCGA § 15-11-81 (b) (4) (A) (ii), the trial court shall consider whether the parent without justifiable cause failed significantly for a period of one year or longer (1) to communicate or make a bona fide attempt to communicate with the child, (2) to provide for the care and support of the child as required by law or judicial decree, and (3) to comply with a court-ordered plan to reunite the child with the parent. OCGA § 15-11-81 (b) (4) (C). Evidence introduced at the hearing established that Hanson fled to Alabama with A. C.'s father to avoid arrest on an outstanding warrant. Hanson did not see A. C. for a year. It was only after she had been arrested and brought back to Georgia that she requested DFCS to arrange supervised visitation sessions with the child. Six such visitations had occurred at the time of the hearing. Hanson acknowledges that she provided no support for the child, but now asserts that there was no court order requiring her to do so. This argument is specious in light of OCGA § 19-7-2, which obligates each parent to provide for the maintenance, protection, and education of his or her child. Finally, the evidence establishes that Hanson did not comply with the terms of the reunification plan which are outlined above. Hanson admitted that during that time she failed to submit to drug and alcohol assessment,[1] failed to provide a safe and stable home for A. C. for the first year of the child's life and attempted to resolve outstanding criminal matters by fleeing the jurisdiction. Having established that A. C. is deprived and that such deprivation is caused by Hanson, we next consider the third factor, whether the deprivation of A. C. is likely to continue. OCGA § 15-11-81 (b) (4) (A) (iii). "In addition to evidence of present parental misconduct or inability, evidence of past conduct may be considered in determining whether the deprivation would be likely to continue. Such an inference is appropriate, since the juvenile court is not required to reunite [A. C.] with [Hanson] in order to obtain current evidence of deprivation or neglect." (Citations and punctuation omitted.) *In the Interest of E. C.*, supra, 225 Ga. App. at 16. The evidence shows that Hanson used cocaine while pregnant with A. C., and they both tested positive for the drug at the time of A. C.'s birth. Hanson

---

[1] Hanson submitted to one drug screen, five days prior to the termination hearing. She testified that she had scheduled a drug and alcohol assessment, but that the evaluation had not been conducted prior to the termination hearing.

has continued her relationship with A. C.'s father, who describes himself as a "serious" drug user who used illicit drugs for nearly 28 years and, despite having been through several drug rehabilitation programs, has failed to stay drug-free for longer than six to eight months at a time. Hanson testified that she plans to marry A. C.'s father despite these admissions of drug use and the voluntary surrender of his parental rights.

Furthermore, as noted above, Hanson submitted to a single drug screen since the development of the reunification plan. The caseworker testified that for a year Hanson did not contact DFCS regarding the child, obtain a drug and alcohol assessment, or provide any support for the child, despite plan requirements that she do so. This evidence supports a finding that A. C. would continue to be deprived if reunited with Hanson.

Finally, we consider whether the "continued deprivation will cause or is likely to cause serious physical, mental, emotional, or moral harm to the child." OCGA § 15-11-81 (b) (4) (A) (iv). Despite several supervised visits between A. C. and Hanson immediately prior to the termination hearing, the DFCS caseworker noted that she observed no bond between A. C. and Hanson. In contrast, she testified that the child has bonded to the aunt and uncle with whom she has resided for all but the first two or three months of her life and who want to adopt her. This evidence supports a finding that A. C. would suffer serious harm if returned to Hanson.

We are satisfied that there is clear and convincing evidence of "parental misconduct or inability" as contemplated by OCGA § 15-11-81 (a) and next turn to the trial court's determination that termination of Hanson's parental rights "is in the best interest of the child, after considering the physical, mental, emotional, and moral condition and needs of the child who is the subject of the proceeding, including the need for a secure and stable home." OCGA § 15-11-81 (a). "Those same factors which show the existence of parental misconduct or inability can also support a finding that the termination of parental rights of the defaulting parent would be in the child's best interest." (Citations and punctuation omitted.) *In the Interest of E. C.,* supra, 225 Ga. App. at 18. The abandonment of the child for the first year of her life and the total noncompliance with the DFCS reunification plan for over a year are sufficient to establish by clear and convincing evidence that termination of Hanson's parental rights is in A. C.'s best interest.

2. Because the juvenile court's order clearly delineated the basis for its decision, Hanson's argument that it failed to meet the statutory requirements necessary to terminate her rights in the child is without merit.

*Judgment affirmed. Pope, P. J., and Blackburn, J., concur.*

DECIDED JANUARY 30, 1998 ▮

*Bischoff & White, Lloyd W. Walker,* for appellant.
*Thurbert E. Baker, Attorney General, Jeffrey L. Milsteen, Deputy Attorney General, Shalen A. Sgrosso, Assistant Attorney General, Burn & Schell, Glen P. Burn, Edea M. Caldwell,* for appellee.