A98A1010. IN THE INTEREST OF D. A. P. et al., children.

(506 SE2d 438)

SMITH, Judge.

The biological father of D. A. P., who is also the "legal" father of M. W. P. and S. L. W., appeals from the order of the Chatham County Juvenile Court terminating his parental rights as to all three children.[1] We find no error and affirm.

These children, aged thirteen, eight, and five at the time of the termination hearing, have been in the temporary legal custody of the Chatham County Department of Family & Children Services (DFACS) since 1993, when they were first adjudicated as deprived.[2] Their mother has been in and out of substance abuse treatment and detoxification facilities for many years. The youngest child was born cocaine positive, the mother having used cocaine during her pregnancy. In 1992, the mother was separated from appellant but still married to him. She and the biological father of the younger children (the "other father"), along with the children, were living in a homeless shelter. The mother released all three children into foster care for a 90-day period in February 1993 so that she could enter detoxification and drug treatment. But in May 1993, the mother was still homeless and on drugs, and DFACS filed a petition requesting temporary custody for two years, which was granted.

A case plan for reunification was established for the mother and for the other father, but no case plan was established for appellant. He was incarcerated several times and was transferred from facility to facility, making it difficult for DFACS to locate him. He was never served in the prior deprivation proceeding, he did not participate in that proceeding, and the juvenile court recognized that his parental rights were not affected.

---

[1] The father originally filed his appeal in the Supreme Court, and the State filed a motion to dismiss the appeal for lack of jurisdiction. The Supreme Court denied the motion to dismiss and transferred the case to this Court.

[2] An older child was not included in these proceedings. She was voluntarily placed in the home of an elderly woman by her parents in 1987, after she accused appellant of sexually abusing her.

The mother and the other father made no significant progress toward complying with the case plans established for them, and after two orders extending temporary custody, DFACS filed a petition in December 1996 seeking to terminate the parental rights of appellant, the mother, and the other father. Appellant was found and served with process at the Albany Transitional Center. He appeared at the hearing on the petition, he was represented by counsel, and he participated in the proceedings.

1. Appellant contends his constitutional rights to due process and equal protection were violated because he was not apprised of the prior proceedings, he did not participate in those proceedings, and he was not given the same "opportunities by the Department to try to better his parental situation" that the mother and the other father were given. We do not agree.

"Due process of law means the administration of general laws according to established rules, not violative of the fundamental principles of private right, by a competent tribunal having jurisdiction of the subject matter, and proceeding upon notice and hearing." (Citation and punctuation omitted.) *Dependable Ins. Co. v. Gibbs*, 218 Ga. 305, 311 (2) (127 SE2d 454) (1962). "The fundamental idea of due process is notice and an opportunity to be heard. [Cit.]" *Nix v. Long Mtn. Resources*, 262 Ga. 506, 509 (422 SE2d 195) (1992). Appellant unquestionably had a fundamental right to maintain a parent-child relationship with his children. *Stanley v. Illinois*, 405 U. S. 645, 651 (92 SC 1208, 31 LE2d 551) (1972). But when DFACS sought to terminate appellant's rights, it located him and ensured that he was properly served and received notice of the proceedings and an opportunity to be heard, and he availed himself of that opportunity.

Moreover, although appellant was not afforded the same opportunities for remediation the mother and the other father received in the prior proceeding, this was not the result of a denial of equal protection of the law. Appellant possessed a constitutionally protected interest that could not be denied him by State action. But his inability to parent his children properly was not the result of any action on the part of the State. His failure to parent his children and his inability to be involved in the prior proceedings are the direct result of his incarceration after being convicted several times of felonies. He cannot now object to the natural consequences of his own criminal behavior. *Turner v. Wright*, 217 Ga. App. 368, 369 (1) (457 SE2d 575) (1995).

2. Appellant also contends that insufficient evidence was presented to support the termination of his parental rights. He argues basically that his parental rights were terminated because of the mother's failures, not his own, because he was incarcerated for most of the applicable time period and was unable to do more for the

children. On the contrary, clear and convincing evidence was presented that supports the juvenile court's termination of appellant's parental rights.

"Termination of parental rights under OCGA § 15-11-81 is a two-step process. The court must first determine whether clear and convincing evidence exists of parental misconduct or inability. The court then determines whether termination is in the best interest of the child. [Cit.]" *In the Interest of R. L. M.*, 221 Ga. App. 343 (471 SE2d 245) (1996). Our standard on review is whether a rational trier of fact could have found by clear and convincing evidence that the parent's rights were lost. Id.

The evidence presented showed that appellant has been incarcerated five times since the birth of the oldest of these three children. During appellant's incarcerations the children had no contact with him. Appellant conceded that his incarcerations had a negative effect on his children. It is clear that appellant did not provide proper parenting for these children. Although incarceration alone need not always compel the termination of parental rights, it can support such a ruling when sufficient aggravating circumstances are present. *In the Interest of S. K. L.*, 199 Ga. App. 731, 733 (1) (405 SE2d 903) (1991). When "an incarcerated parent has a criminal history of repetitive incarcerations for the commission of criminal offenses . . ., this constitutes an additional factor which may be considered in determining whether the child *presently* is without the proper parental care and control of the offending parent, and that such is likely to continue." (Citations and punctuation omitted.) *In the Interest of L. F.*, 203 Ga. App. 522 (417 SE2d 344) (1992). Appellant's almost continuous incarceration for repeated criminal offenses clearly constitutes an aggravating circumstance.

When children are not in the custody of the parent whose rights are subject to termination, in determining whether the child is without proper parental care or control, the juvenile court must consider whether that parent without justifiable cause failed significantly for one year or longer prior to the filing of the petition for termination: "(i) [t]o communicate or to make a bona fide attempt to communicate with the child in a meaningful, supportive, parental manner; (ii) [t]o provide for the care and support of the child as requested by law or judicial decree; and (iii) [t]o comply with a court ordered plan designed to reunite the child with the parent or parents." OCGA § 15-11-81 (b) (4) (C) (i)-(iii).

Appellant did not communicate with the children after DFACS obtained temporary legal custody of them, notwithstanding evidence presented that he was aware of this circumstance. He did not make any contact with DFACS until after he was served with the termination petition. He provided no support and sent no gifts, letters, or

other correspondence to these children. He made no attempt to find out from DFACS where his children were located.

At the time of the hearing, appellant was serving a six-year prison sentence. He acknowledged that the sentence would not be completed until the year 2000. Contrary to appellant's arguments, the possibilities that he might be released soon on parole and that he would be able to care for the children after that release are based entirely upon conjecture. This Court has held that " '(t)he decision as to a child's future must rest on more than positive promises which are contrary to negative past fact.' [Cit.]" *In the Interest of D. I. W.*, 215 Ga. App. 644, 646 (451 SE2d 804) (1994). In considering the best interest of the children, the juvenile court may further consider their need for stability and the harmful effects of prolonged foster care. Id. Based on appellant's past behavior, the juvenile court was authorized to conclude that deprivation was not likely to be remedied in the future and that it was in the children's best interest that appellant's parental rights be terminated. After reviewing the evidence in the light most favorable to appellant, any rational trier of fact could find by clear and convincing evidence that his parental rights have been lost. See generally *In the Interest of L. F.*, supra.

*Judgment affirmed. Johnson, P. J., and Senior Appellate Judge Harold R. Banke concur.*

DECIDED SEPTEMBER 8, 1998.

*Darden & Moyers, Andrea S. Moyers*, for appellant.

*Thurbert E. Baker, Attorney General, Dennis R. Dunn, William C. Joy, Senior Assistant Attorneys General, Shalen A. Sgrosso, Stephanie M. Baldauff, Assistant Attorneys General, Leo G. Beckmann, Jr.*, for appellee.

