520 S.E.2d 19 (1999)
239 Ga. App. 142
In the Interest of J.K., a child.
No. A99A0434.
Court of Appeals of Georgia.
June 25, 1999.
Reconsideration Dismissed July 16, 1999.
*20 McCamy, Phillips, Tuggle & Fordham, Ann H. Searcy, LaFayette, for appellant.
Thurbert E. Baker, Attorney General, Dennis R. Dunn, Deputy Attorney General, William C. Joy, Senior Assistant Attorney General, Shalen A. Sgrosso, Stephanie B. Hope, Assistant Attorneys General, Waycaster, Morris, Johnson & Dean, Cynthia N. Johnson, Dalton, for appellee.
RUFFIN, Judge.
Appellant, the father of J.K., appeals from the juvenile court's order terminating his parental rights.[1] Appellant challenges the *21 sufficiency of the evidence and argues that he was not given notice that his failure to legitimate the child would result in termination of his parental rights. Finding no error, we affirm.
J.K., the biological daughter of appellant, was born in May 1995. J.K.'s mother wasand still ismarried to another man, with whom she has three other children. When J.K. was conceived, the mother's husband was in prison and the mother was living with appellant. By the time J.K. was born, however, appellant was incarcerated, as well. Appellant was released in November 1995, after which he lived briefly with the mother and J.K. However, appellant returned to prison in 1997 and is currently serving an eight-year sentence.
In July 1997, while appellant was incarcerated, the Department of Family & Children Services (DFCS) received a report that J.K.'s mother had given her to a relative. DFCS found J.K. in the home of her uncle, which the agency determined to be an unsuitable placement. Following a hearing on September 2, 1997, the juvenile court found that J.K. was deprived and awarded temporary legal custody of her to DFCS. Later that month, a case plan was developed to reunite J.K. with her mother and her mother's husband, who had been released from prison. Appellant was not included in the case plan because he remained incarcerated, and at the time, DFCS was unaware of how to reach him. On July 2, 1998, DFCS filed a petition to terminate the parental rights of J.K.'s mother, the mother's husband,[2] and appellant. On August 25, 1998, the juvenile court held a hearing on the termination petition.
Appellant, who was present at the hearing, testified that he has spent most of the past eight years incarcerated. In 1990, he pled guilty to burglary and was imprisoned for 16 months. Seven months after his release on parole, appellant was again arrested for burglary and again pled guilty. He was sentenced to eight years in prison, but was paroled in 1993 after serving two and one-half years. In April 1995, one month before J.K. was born, appellant was convicted of theft by receiving and served seven months in jail. In 1997, less than one year after his release from jail, appellant was arrested for felony theft by receiving. He pled guilty and received an eight-year sentence. At the time of the parental termination hearing, appellant had served 15 months of his sentence. Although appellant predicted that "[i]t shouldn't be very much longer" before he is released, his sentence will not expire until 2005.
Appellant has never been married to J.K.'s mother and, at the time of the hearing, had taken no steps to legitimate J.K.[3] Appellant testified that he lived with J.K. and her mother for ten months in 1996 before he was incarcerated on the felony theft conviction, during which time he financially supported J.K. and fed and bathed her. The mother, however, testified that appellant lived with J.K. and her for only a month or two before he returned to prison. With the exception of this brief period in 1996, appellant has made no effort to support J.K. Appellant does not visit J.K. and presently has no relationship with her.
J.K. has an older sister, M.K., who also was fathered by appellant. Like J.K., M.K. was conceived during a period when the mother was living with appellant. Appellant was incarcerated when M.K. was born. M.K. was removed from her mother's custody in 1995 and currently lives with an uncle. Appellant has never lived with M.K., and there is no evidence that he has ever contributed to her support or had any relationship with her either.
J.K.'s caseworker testified that J.K. currently lives in a licensed foster home. According to the caseworker, J.K. has adapted well to the placement and has bonded with her foster parents, who have expressed interest in adopting her.
*22 Following the hearing, the juvenile court entered an order terminating appellant's parental rights as to J.K. The court found that lack of proper parental care and control caused J.K.'s deprivation and that her parents, including appellant, were unfit.
1. The standard of review applicable to appellant's challenge to the sufficiency of the evidence is "whether after reviewing the evidence in the light most favorable to the appellee, any rational trier of fact could have found by clear and convincing evidence that the natural parent's rights to custody have been lost." (Punctuation omitted.) In the Interest of A.C., 230 Ga.App. 395, 396(1), 496 S.E.2d 752 (1998). "[W]e defer to the trial court's factfinding and affirm unless the appellate standard is not met." (Punctuation omitted.) In the Interest of S.N.N., 230 Ga. App. 109, 495 S.E.2d 602 (1998). OCGA § 15-11-81(a) sets forth a two-step process to be used in termination of parental rights cases. First, the trial court determines "whether there is present clear and convincing evidence of parental misconduct or inability." Id. Four factors must be present to establish parental misconduct or inability: (1) the child must be deprived; (2) the lack of proper parental care or control by the parent in question must cause the deprivation; (3) the cause of the deprivation must be likely to continue; and (4) continued deprivation must be likely to cause the child serious physical, mental, emotional, or moral harm. OCGA § 15-11-81(b)(4)(A)(i)-(iv). If the trial court finds that these four factors exist, then the court determines whether termination of parental rights is in the best interest of the child. In the Interest of D.A.P., 234 Ga.App. 257, 259(2), 506 S.E.2d 438 (1998).
We agree with the trial court's determination of parental misconduct or inability on the part of appellant. As for the first factor, J.K. was judicially determined to be deprived and was taken into custody in July 1997. Because appellant never appealed the deprivation order, he is bound by the finding of deprivation and the first factor is satisfied. In the Interest of E.C., 225 Ga.App. 12, 14-15, 482 S.E.2d 522 (1997).
In determining whether J.K.'s deprivation was caused by appellant's lack of proper parental care or control, the trial court was authorized to consider, among other things, whether appellant's incarceration for a felony "has a demonstrable negative effect on the quality of the parent-child relationship." OCGA § 15-11-81(b)(4)(B)(iii). "Although incarceration alone need not always compel the termination of parental rights, it can support such a ruling when sufficient aggravating circumstances are present." In the Interest of D.A.P., supra. Moreover, an incarcerated parent's history of repeated imprisonment for criminal offenses "constitutes an additional factor which may be considered in determining whether the child presently is without the proper parental care and control of the offending parent, and that such is likely to continue." (Punctuation omitted.) Id.; see also In the Interest of S.N.N., supra at 110(1), 495 S.E.2d 602; In the Interest of T.B.R., 224 Ga.App. 470, 473(1)(b), 480 S.E.2d 901 (1997). The evidence showed that appellant has repeatedly been imprisoned for criminal offenses over the past eight years, including most of J.K.'s life. He was arrested and incarcerated just one month before J.K. was born and is currently serving an eight-year sentence for a different crime. Appellant has provided no support for J.K. while in prison, has not contacted her, and has no relationship with her. These factors clearly constitute "aggravating circumstances" supporting the trial court's finding that appellant's incarceration has had a negative effect on J.K. In the Interest of D.A.P., supra.
When the child is not in the custody of the parent whose rights are at issue, the trial court must also consider whether the parent without justifiable cause failed significantly for a period of one year or longer (1) to communicate or make a bona fide attempt to communicate with the child in a meaningful, supportive, parental manner; (2) to provide for the care and support of the child; and (3) to comply with a court-ordered plan to reunite the child with the parent. OCGA § 15-11-81(b)(4)(C). While in prison, appellant has made no attempt to communicate with either J.K. or M.K. and has provided no support. Appellant asserts that his failure to participate in the case plan for J.K. cannot be held against him because DFCS never asked him to participate. However, DFCS could not locate appellant, and there is no evidence *23 that appellant attempted to contact anyone to ascertain J.K.'s whereabouts or custody status. In the Interest of D.A.P., supra at 259-260, 506 S.E.2d 438. In short, appellant demonstrated no interest whatsoever in J.K. during the year prior to the parental rights termination hearing. Thus, there was clear and convincing evidence that J.K.'s deprivation was caused, in part, by appellant's lack of proper parental care or control.[4]
We also uphold the trial court's finding that J.K.'s deprivation would likely continue if appellant retained parental rights. "In determining whether conditions of deprivation are likely to continue, the court may consider the past conduct of the parent." In the Interest of R.D.S.P., 230 Ga.App. 205, 207, 495 S.E.2d 867 (1998). Although appellant asserts on appeal that he "wants the responsibility of being a parent," he gave no such testimony at trial,[5] and he offered no evidence of how he planned to care for J.K. should he retain parental rights. In addition, appellant's "past and current criminal incarcerations evidence a patent disregard for the child's welfare and that the pattern of deprivation is likely to continue." In the Interest of S.N.N., supra.
Finally, the record supports the trial court's conclusion that continued deprivation is likely to harm J.K. There is no parental bond between J.K. and appellant. J.K. has adapted well to foster care, and her foster parents wish to adopt her. "This evidence supports a finding that [J.K.] would suffer serious harm if returned to [appellant]." In the Interest of A.C., supra at 398, 496 S.E.2d 752.
As for the second prong of the termination analysis, we are persuaded that the termination of appellant's parental rights is in the best interest of J.K., considering J.K.'s physical, mental, emotional and moral condition and her "need for a secure and stable home." OCGA § 15-11-81(a). "The same evidence showing parental misconduct or inability may, and here does, establish this requirement." (Punctuation omitted.) In the Interest of C.L.R., 232 Ga.App. 134, 138(2), 501 S.E.2d 296 (1998).
2. We find no merit in appellant's second enumeration of error, that he was not given notice pursuant to OCGA § 15-11-83(h) that failure to legitimate J.K. would result in termination of his parental rights. As we have held,
[t]he notice requirements of OCGA § 15-11-83 relate only to the availability of the abbreviated termination procedures contained therein and do not affect the jurisdiction of the court below to consider a termination proceeding, such as in the case sub judice, brought pursuant to OCGA § 15-11-81.
In the Interest of C.M.S., 218 Ga.App. 487(1), 462 S.E.2d 398 (1995). Although DFCS's petition for termination listed as one of the grounds for termination appellant's failure to legitimate J.K., the juvenile court's termination order was expressly based on appellant's parental misconduct and inability, not his failure to legitimate J.K. Because appellant's failure to legitimate J.K. "did not contribute to the judgment terminating parental rights ..., there was no harm resulting from the absence of the notice directed by OCGA § 15-11-83(e) and (g)." Id. at 488, 462 S.E.2d 398.
Judgment affirmed.
McMURRAY, P.J., and ANDREWS, J., concur.
NOTES
[1] In the same order, the juvenile court also terminated the parental rights of J.K.'s mother and her husband, neither of whom has filed an appeal.
[2] At the time, the mother's husband was the legal father of J.K.
[3] At the hearing, appellant indicated his desire to legitimate J.K., and a consent order of legitimation was entered prior to the entry of the order terminating appellant's parental rights.
[4] Based on appellant's admission at the hearing that he has used marijuana and on a photograph showing appellant holding baby J.K. near a substance resembling marijuana, the juvenile court found that appellant has a "history of chronic unrehabilitated use and abuse of intoxicating liquors and illegal drugs." Appellant challenges this finding on appeal. Pretermitting whether there was sufficient evidence to support this finding, the juvenile court did not err in finding clear and convincing evidence of parental misconduct. The finding of drug abuse was not the only basis for the juvenile court's termination order, and other competent evidence was sufficient to support a finding of parental misconduct or inability, such as appellant's extensive criminal history and his failure to initiate or maintain contact with his children.
[5] Appellant testified only that he did not want J.K.'s mother to have custody of J.K. because her husband was not a fit parent.