A00A2467. IN THE INTEREST OF C. T. et al., children.
(544 SE2d 203)

ANDREWS, Presiding Judge.

The father of C. T. and D. T. appeals from the juvenile court's order terminating his parental rights. He argues there was insufficient clear and convincing evidence to show that his rights should be terminated and also claims the court should have secured his presence at the hearing, either in person or by telephone. We find no reversible error and affirm.

1. Before terminating a parent's rights, a juvenile court, pursuant to OCGA § 15-11-81 (a), must employ a two-step procedure. *In the Interest of C. L. R.*, 232 Ga. App. 134 (1) (501 SE2d 296) (1998).

First, the court shall determine whether there is present clear and convincing evidence of parental misconduct or inability as provided by OCGA § 15-11-81 (b). Secondly, if there is clear and convincing evidence of such parental misconduct or inability, the court shall then consider whether termination of parental rights is in the best interest of the

---

child. Parental misconduct or inability is found where (1) the child is deprived, (2) the lack of proper parental care or control by the parent in question is the cause of the child's deprivation, (3) the cause of deprivation is likely to continue or will not likely be remedied, and (4) the continued deprivation will cause or is likely to cause serious physical, mental, emotional, or moral harm to the child. OCGA § 15-11-81 (b) (4) (A).

(Citations and punctuation omitted.) Id.

On appeal, we must determine

whether, after reviewing the evidence in the light most favorable to the appellee, any rational trier of fact could have found by clear and convincing evidence that the natural parent's right to custody should be terminated. . . . [T]his Court neither weighs evidence nor determines the credibility of witnesses; rather, we defer to the trial court's factfinding and affirm unless the appellate standard is not met.

(Citations and punctuation omitted.) *In the Interest of C. L. R.*, supra.

The evidence at the hearing, viewed in the light most favorable to the juvenile court's judgment, was as follows. C. T. was born on January 9, 1996, and D. T. was born June 28, 1998. The children have been in the care of the Department of Family & Children Services (Department) since February 17, 1999, because the children's mother had Huntington's Disease and was unable to care for them.[1] The father, who is an illegal alien, had been in prison since August 1998 and was awaiting deportation as a convicted felon at the time of the termination hearing. The father wrote the Department only one time while the children were in its care and never attempted to communicate with the children. In addition, the father has a criminal history of one conviction for simple battery, one conviction for aggravated assault, and one conviction for family violence, all involving attacks on the children's mother.

The children are currently in a foster home, and the foster parents wish to adopt them. The home is suitable for the children, and the children have bonded with the foster parents.

With regard to the juvenile court's finding on the first prong, clear and convincing evidence of parental misconduct or inability, the father does not dispute that the children are deprived and that lack of proper parental care is the cause of the deprivation. But, he argues

---

[1] The children's mother surrendered her parental rights on November 19, 1999.

there was not clear and convincing evidence that the deprivation was likely to continue and the continued deprivation will cause serious harm to the children. In support of this claim, the father contends that there was no evidence that he was violent with the children or that any case plans were developed and communicated to him.

In determining whether conditions of deprivation are likely to continue, the court may consider the past conduct of the parent. *In the Interest of J. M. C.*, 201 Ga. App. 173, 174 (410 SE2d 368) (1991). In this case, there was not only evidence of past unfitness, there was present unfitness also. *Blackburn v. Blackburn*, 249 Ga. 689, 692 (292 SE2d 821) (1982). While imprisonment alone does not automatically authorize a termination of parental rights, it will support such a ruling when adequate aggravating circumstances are shown to exist. *In the Interest of L. F.*, 203 Ga. App. 522 (417 SE2d 344) (1992). Moreover, an incarcerated parent's history of repeated criminal offenses "constitutes an additional factor which may be considered in determining whether the child presently is without the proper parental care and control of the offending parent, and that such is likely to continue." (Punctuation and emphasis omitted.) *In the Interest of J. K.*, 239 Ga. App. 142, 145 (520 SE2d 19) (1999).

Here, the evidence is uncontradicted that the father is unable to provide a home or any other necessities of life for the children. At the time of the final hearing, he was awaiting deportation to Mexico. He provided no evidence of when, if ever, he would be able to care for the children. In addition, he has provided no support for the children while in prison, has not attempted to communicate with them, has not inquired about them and has no relationship with them. *In the Interest of J. K.*, supra. We find these factors to be "aggravating circumstances" supporting the termination of the father's parental rights. Id.

In light of the above, the juvenile court correctly concluded that there was clear and convincing evidence that the pattern of deprivation is likely to continue and to cause harm to the children.

If the first prong of the test is met, the trial court then considers whether termination of the parental rights is in the children's best interests. *In the Interest of R. N.*, 224 Ga. App. 202 (480 SE2d 243) (1997). Although appellant does not argue that the juvenile court erred in finding that termination was also in the best interests of the children, we will address this issue.

In looking at this second prong, the court may consider the children's need for a stable home environment and the detrimental effects of prolonged foster care. *In the Interest of J. M. C.*, supra at 175. The court may also look at the same factors which show parental inability to care for the child to support a finding that termination of parental rights would be in the child's best interest. *In the Interest*

*of G. K. J.*, 187 Ga. App. 443, 444 (370 SE2d 490) (1988). The same evidence showing parental misconduct may, and in this case does, satisfy this requirement. *In the Interest of C. L. R.*, supra at 138.

Accordingly, the children's need for a stable home environment, the father's past and present unfitness to care for them and his failure to put forth any evidence that he will ever be able to provide for them were sufficient clear and convincing evidence that termination was also in the best interests of the children. *In the Interest of J. M. C.*, supra; *In the Interest of T. R. G.*, 162 Ga. App. 177 (290 SE2d 523) (1982).

2. The father also argues that the trial court erred in not securing his presence at the termination hearing. There was evidence in the record that a request had been made to the facility where the father was being held that he be "transported for the Hearings on his children." The response was that "under no condition could [appellant] be moved from the facility (except for deportation)." Because the father's inability to be present at the hearing was the consequence of his own actions, "we know of no constitutional entitlement mandating the right to appear personally in civil proceedings under such circumstances." *In the Interest of M. G. F.*, 222 Ga. App. 816, 818 (476 SE2d 100) (1996). Nevertheless, the father argues that he should have been allowed to participate via telephone. He cites to no authority in support of this argument, and we find none.

The juvenile court judge, addressing this issue in her order, noted that the father was being held in a federal penitentiary in Alabama and the court had been denied a similar request by the federal government in a previous case. The court further stated that such a call "would be unduly burdensome, expensive, and onerous to the decorum and efficiency of these proceedings."

Moreover, the father was represented by counsel who appeared in his stead and who could have introduced any evidence appellant wished to put before the court. Counsel argued on the father's behalf and had the opportunity to cross-examine and did cross-examine the Department's witness. *In the Interest of M. G. F.*, supra at 817. Accordingly, we conclude the father suffered no harm in not participating in the hearing and, therefore, has shown no reversible error in the trial court's decision. Id.

*Judgment affirmed. Ruffin and Ellington, JJ., concur.*

DECIDED JANUARY 10, 2001.

*Michael R. McCarthy*, for appellant.

*Thurbert E. Baker, Attorney General, Dennis R. Dunn, Deputy Attorney General, William C. Joy, Senior Assistant Attorney General,*

*Shalen S. Nelson, Assistant Attorney General, Waycaster, Morris, Johnson & Dean, Cynthia N. Johnson,* for appellee.

