A01A0520. In the Interest of K. C. et al., children.

(549 SE2d 737)

Smith, Presiding Judge.

The parents of K. C., C. C., J. H. C., and W. T. C. appeal from the orders of the Juvenile Court of Elbert County terminating their rights in four of their children. They raise four enumerations of error which, with minor differences, all bear on the sufficiency of the evidence to support the trial court's judgments. We find that the evidence was sufficient to support the judgments, and we affirm all four orders.

The record shows that K. C., J. H. C., and W. T. C. twice came under the supervision of the Clarke County Department of Family & Children Services (DFACS) and that they remained in foster care for approximately one year before being reunited with their parents.[1] The parents had been married ten years at the time of the hearing on the petition and have a history of incarcerations and probations for passing bad checks. The mother has a total of seven children. In addition to those at issue here, she has two children from a prior marriage who live with the mother of her former husband. She also has a daughter from that marriage who lives with her maternal grandmother. In September 1996, when C. C., the youngest child, was approximately nine months old, the parents abandoned all four children when they learned that the police were looking for the mother to serve an arrest warrant for probation violation. They asked the maternal grandmother to take care of the children and left to work and pay off past probation fines. The grandmother agreed and picked up the children with another woman, who had once before cared for C. C., the youngest child. C. C. has been in the care of this woman ever since. The grandmother kept the three older children until the end of November, when DFACS filed a deprivation petition and the children were placed in foster care.[2]

---

[1] At that time, C. C. had not been born.
[2] C. C.'s placement was retained with the person who had been caring for him.

Approximately one year later, DFACS brought a petition seeking the termination of the parents' rights in the children. After a hearing before an associate juvenile court judge, to which both parents were brought from prison, the petition was granted. The mother and father requested a de novo review, and a de novo hearing before a juvenile court judge was conducted in juvenile court. In the interim, visitation was granted to the parents but rescinded when the visits with the children did not go well, particularly a visit over the Thanksgiving holiday. A court-ordered evaluation of the children and the parents was conducted by a psychologist. After considering the evidence and the evaluation, the juvenile court found clear and convincing evidence supporting a decision to terminate the parents' rights in each of the children. The parents bring this appeal.

1. A two-step process must be used when considering whether to terminate parental rights. First, pursuant to OCGA § 15-11-94 (a),[3] a court must find clear and convincing evidence of parental misconduct or inability. Parental misconduct or inability exists when (i) the child is deprived, as that term is defined in Code section 15-11-2 (8); (ii) lack of proper parental care or control is the cause of the child's deprivation; (iii) the cause of deprivation is likely to continue or not be remedied; and (iv) it will cause or is likely to cause serious physical, mental, emotional, or moral harm to the child. OCGA § 15-11-94 (b) (4) (A). Second, if the court finds clear and convincing evidence of parental misconduct or inability, it then considers whether termination of parental rights is in the best interest of the child, considering the child's physical, mental, emotional, and moral condition and needs, including the child's need for a secure and stable home. *In the Interest of J. H.*, 244 Ga. App. 788, 791 (2) (536 SE2d 805) (2000).

In three enumerations, the parents contend that the trial court did not make a specific finding of present unfitness that included the period of time between the original termination order and the rehearing and that even had such finding been made, the evidence in the record does not support it. We do not agree.

We note initially that we know of no statute or court rule that permits a de novo evidentiary hearing to be held on reconsideration, as was done here. See *In the Interest of M. E. T.*, 197 Ga. App. 255, 256-257 (1) (398 SE2d 30) (1990). Both OCGA § 15-11-21 (e) and Uniform Juvenile Court Rule 19.2 require the juvenile court judge, upon request by a party, to review the evidence presented at the original hearing before the associate juvenile court judge.

The evidence at the original hearing clearly was sufficient to show the parents' unfitness. Both parents were incarcerated for

---

[3] In 2000, the General Assembly renumbered these Code sections.

much of the time the children were in foster care. The children reported to the foster mother that they had been sexually abused by two friends of their father. The foster mother of the three older children testified that all three children were in therapy, seeing a psychologist regularly, and making progress. Even discounting the evidence that the children were sexually abused in their parents' home, knowledge of which the parents denied, their abandonment of the children and their cavalier attitude regarding having others take care of the children, coupled with their history of incarcerations and their present incarceration, amply showed the parents' unwillingness or inability to care for their children.

In addition, the parents admitted they had not maintained regular employment or a stable home and had not provided financial support for their children while they were working and the children were in the care of others. They did not remain in consistent contact with their children. When they did have contact with the children, the children reacted poorly. Considering only this evidence, a finding of present unfitness was well supported. The court was required to base its decision on more than the parents' promises of responsible behavior in the future, when their past behavior shows clear irresponsibility. See *In the Interest of J. M. M.*, 244 Ga. App. 171, 176 (534 SE2d 892) (2000).

Although unnecessary, the new evidence presented at the de novo rehearing simply reinforced this showing. Since the Thanksgiving visitation W. T. C.'s problems had escalated. He was suspended from school for fighting, and immediately before the rehearing he was hospitalized in a psychiatric facility for observation. The juvenile court's findings upon rehearing reflect this evidence. The orders specifically refer to the court-ordered psychological evaluation of the children and their parents, which was done after the original termination order. This evaluation confirmed the children's problems and special needs, as well as the opinion that the parents would be unable to meet those needs. Although the evaluation was completed several months before the rehearing, contrary to the parents' contention, this evidence was not "stale." Even "[e]vidence that is a couple of years old is not necessarily outdated, as there will be some passage of time between the removal of the child[ren] and the termination hearing." (Footnote omitted.) *In the Interest of A. M. L.*, 242 Ga. App. 121, 123 (1) (c) (527 SE2d 614) (2000).

Clearly, the juvenile court judge's findings included that of present unfitness.

2. We find no merit in the parents' contention that the orders failed to set out sufficient findings to support the juvenile court's conclusion that continued deprivation was likely to cause serious mental, emotional, or moral harm to the children. Testimony from

the foster mother and the caseworker that visits with their parents upset the children greatly and disrupted their behavior demonstrates the harm the children suffered. The court-ordered evaluation concluded that even "average" parents would find it extremely difficult to manage the children because their problems were so severe. These parents have amply demonstrated their lack of adequate parenting skills. No evidence was presented other than the parents' promises for the future that their parenting problems would not continue. And the evidence supports a finding that the children would suffer serious harm if returned to the parents. See *In the Interest of J. K.*, 239 Ga. App. 142, 146 (1) (520 SE2d 19) (1999). The juvenile court did not err in terminating the rights of the parents.

*Judgment affirmed. Barnes and Phipps, JJ., concur.*

DECIDED MAY 23, 2001.

*Peters & Anderson, James S. Grimes*, for appellants.

*Thurbert E. Baker, Attorney General, Dennis R. Dunn, Deputy Attorney General, William C. Joy, Senior Assistant Attorney General, Shalen S. Nelson, Assistant Attorney General, Susanne F. Burton*, for appellee.