A02A2310. IN THE INTEREST OF B. L. H., a child.
(578 SE2d 143)

PHIPPS, Judge.

The biological father of B. L. H. appeals a juvenile court order that terminated his parental rights. He contends that there was insufficient evidence to terminate his rights and that the court should have secured his presence at the termination hearing. We find no reversible error and affirm.

1. In deciding whether to terminate parental rights pursuant to OCGA § 15-11-94, the court must determine first whether there is clear and convincing evidence of parental misconduct or inability.[1] Parental misconduct or inability is found where four factors are established: (1) the child is deprived, (2) the child's deprivation is caused by the parent's lack of proper parental care or control, (3) the cause of deprivation is likely to continue or will not likely be reme-

---

[1] OCGA § 15-11-94 (a).

died, and (4) the continued deprivation will cause or is likely to cause serious physical, mental, emotional, or moral harm to the child.[2] If there is clear and convincing evidence of parental misconduct or inability, the court must then consider whether termination of parental rights is in the best interest of the child, after considering the physical, mental, emotional, and moral condition and needs of the child.[3] On appeal, we view the evidence in the light most favorable to the appellee and determine whether a rational trier of fact could have found by clear and convincing evidence that the parent's rights should have been terminated.[4]

When B. L. H. was born on December 26, 2000, she and her mother tested positive for cocaine and marijuana. The next day, B. L. H. was placed in the custody of the Department of Family and Children Services (DFACS). Her mother surrendered her parental rights on April 10, 2001, identifying appellant as the biological father.

Appellant had been convicted in August 1998 of possessing cocaine with the intent to distribute in July 1997 and in January 1998. He was sentenced to two concurrent ten-year periods of confinement. He had been released on parole, although the record does not make clear the date. At any rate, on April 16, 2001, appellant was incarcerated again for possessing cocaine. At the time of the termination hearing, appellant remained incarcerated.

In January 2001, DFACS filed a petition alleging that B. L. H. was deprived. The juvenile court found her to be deprived that same month. In January 2002, DFACS petitioned to terminate appellant's parental rights. Appellant was personally served with a copy of the termination petition on January 28, and an attorney was appointed to represent him. On February 20, his attorney filed a "motion requesting return of inmate" to attend the termination hearing scheduled for March 7. The day before the hearing, he filed a motion for continuance, stating that appellant had not had sufficient opportunity or time to confer with counsel and prepare for the hearing.

At the beginning of the March 7 hearing, appellant's attorney noted that appellant was not present and that the court had not ruled on the motions. The attorney reported that on February 21, he had sent appellant a letter that explained the severity and possible consequences of the proceedings, yet he had received no response. The juvenile court denied appellant's motions and proceeded with the hearing in appellant's absence. DFACS presented its case. Appellant, through his attorney, presented no direct evidence. The guardian ad

---

[2] OCGA § 15-11-94 (b) (4) (A).
[3] OCGA § 15-11-94 (a).
[4] *In the Interest of C. T.*, 247 Ga. App. 522, 523 (1) (544 SE2d 203) (2001).

litem recommended the termination of appellant's parental rights. Finding evidence of the four factors establishing parental misconduct or inability and determining that termination of appellant's parental rights was in the child's best interest, the court terminated appellant's parental rights to B. L. H.

Appellant does not contest the court's finding that B. L. H. was deprived. He concedes that he did not appeal the order finding B. L. H. deprived and that therefore he remains bound by that finding.[5]

Appellant does contest the court's findings as to the remaining three factors. He claims that there was insufficient evidence to establish that B. L. H.'s deprivation was caused by his lack of proper parental care or control. He urges that he was never given the opportunity to provide parental care because, shortly after B. L. H.'s birth, the mother surrendered the child and he was incarcerated.

In determining whether B. L. H.'s deprivation was caused by appellant's lack of proper parental care or control, the juvenile court was authorized to consider, among other things, whether appellant's felony convictions and imprisonments therefor had "a demonstrable negative effect on the quality of the parent-child relationship."[6] Although incarceration alone does not always compel termination of parental rights, it may support that ruling if sufficient aggravating circumstances are present.[7] These "aggravating circumstances may include a criminal history of repetitive incarcerations for the commission of criminal offenses or parole violations."[8] Further, when the child is not in the custody of the parent whose rights are at issue, the court must consider, among other things, whether the parent, without justifiable cause, failed significantly for a period of one year or longer to communicate or make a bona fide attempt to communicate with the child in a meaningful, supportive, parental manner and to provide for the care and support of the child.[9]

Appellant had been imprisoned for a parole violation during most of B. L. H.'s life. In addition, DFACS presented evidence that appellant had failed significantly for over a year to provide for B. L. H.'s care. He had never provided her with any financial support or gifts; nor had he ever contacted DFACS about her well-being. A DFACS caseworker testified that had appellant shown any interest in B. L. H. or contacted DFACS about her, appellant would have been given the opportunity to participate in a reunification case plan. The

---

[5] See *In the Interest of J. K.*, 239 Ga. App. 142, 144 (1) (520 SE2d 19) (1999).

[6] OCGA § 15-11-94 (b) (4) (B) (iii); *In the Interest of J. K.*, supra at 144-145.

[7] *In the Interest of J. K.*, supra at 145.

[8] *In the Interest of B. C.*, 235 Ga. App. 152, 154 (508 SE2d 774) (1998).

[9] OCGA § 15-11-94 (b) (4) (C).

record amply supports the juvenile court's finding that B. L. H.'s deprivation was caused, in part, by appellant's lack of proper parental care or control.[10]

Next, in determining whether conditions of deprivation are likely to continue, the court may consider the parent's past conduct.[11] Appellant's incarceration shows a disregard for B. L. H.'s welfare and suggests that the pattern of deprivation is likely to continue.[12] Furthermore, "[p]ast conduct during periods of freedom is also a good harbinger of whether deprivation will [likely] continue after incarceration."[13] During appellant's release on parole, he showed no interest in or capacity for adequately caring for B. L. H. He filed a legitimation petition only after DFACS petitioned to terminate his parental rights. He offered no evidence at the termination hearing of how he planned to care for B. L. H. should he retain parental rights. Clear and convincing evidence supported a finding that the deprivation would likely continue.[14]

As to the fourth factor, DFACS presented the testimony of a caseworker that continued deprivation would likely cause B. L. H. harm. It also presented evidence that B. L. H. had been placed with a great aunt and uncle and had become "quite bonded" with them. They already had adopted B. L. H.'s older sibling,[15] and their home was a suitable relative placement for B. L. H. "Children need permanence of home and emotional stability or they are likely to suffer serious emotional problems."[16] DFACS's evidence, along with appellant's past behavior and his failure to show any plan for providing for B. L. H., authorized the juvenile court to find that B. L. H.'s continued deprivation would detrimentally affect her.[17]

Finally, the record demonstrates that the termination of appellant's parental rights is in the best interest of B. L. H. The same evidence showing parental misconduct or inability may, and does in this case, establish this requirement.[18]

2. Appellant argues that the juvenile court violated his constitutional rights to due process by denying his motions to secure his presence at the termination hearing and for a continuance.

---

[10] See *In the Interest of J. K.*, supra.

[11] Id. at 146.

[12] See id.; *In the Interest of S. N. N.*, 230 Ga. App. 109, 110 (1) (495 SE2d 602) (1998).

[13] *In the Interest of B. C.*, supra.

[14] See id. at 154-155.

[15] In 1999, B. L. H.'s mother surrendered parental rights to another child, who also was appellant's biological child. Appellant's parental rights to that child were terminated in 1999.

[16] (Punctuation and footnote omitted.) *In the Interest of P. O. M.*, 255 Ga. App. 534, 536 (3) (566 SE2d 334) (2002).

[17] See id.

[18] See *In the Interest of J. K.*, supra at 146.

The record shows that appellant received notice of the parental termination proceedings and was afforded an opportunity to be heard. Appellant's criminal activity and subsequent incarceration prevented him from availing himself of the opportunity to appear in person. However, he was appointed an attorney, who attempted to confer with him, but appellant did not respond. At the hearing, his attorney appeared in his stead and could have introduced any evidence that appellant wished to put before the court. The record shows that appellant's attorney cross-examined DFACS's witness and argued on appellant's behalf. "[W]e know of no constitutional entitlement mandating the right to appear personally in civil proceedings under such circumstances."[19] Moreover, appellant has not specified how he suffered harm by not attending the hearing, and therefore, he has shown no reversible error.[20]

*Judgment affirmed. Andrews, P. J., and Mikell, J., concur.*

DECIDED FEBRUARY 6, 2003.

*John P. Rivers*, for appellant.

*Thurbert E. Baker, Attorney General, Dennis R. Dunn, Deputy Attorney General, William C. Joy, Senior Assistant Attorney General, Shalen S. Nelson, Assistant Attorney General, James A. Chamberlin, Jr.*, for appellee.

---

[19] (Citation and punctuation omitted.) *In the Interest of C. T.*, supra at 525 (2); *In the Interest of F. L. S.*, 232 Ga. App. 100, 101 (502 SE2d 256) (1998); *In the Interest of M. G. F.*, 222 Ga. App. 816, 818 (476 SE2d 100) (1996).

[20] *In the Interest of C. T.*, supra; *In the Interest of F. L. S.*, supra; *In the Interest of M. G. F.*, supra.