611 S.E.2d 154 (2005)
272 Ga. App. 4
In the Interest of C.A.W., a Child.
No. A05A0599.
Court of Appeals of Georgia.
March 3, 2005.
*155 Benson, Phillips & Hollman, Jason Hoffman, Tifton, for Appellant.
Thurbert Baker, Attorney General, Shalen Nelson, Senior Assistant Attorney General, Rigdon & Cross, Melanie Barbee-Cross, Tifton, for Appellee.
MILLER, Judge.
The father of two-year-old C.A.W. appeals from the juvenile court's order terminating his parental rights. He claims the evidence was insufficient to support the juvenile court's conclusion that continued deprivation of C.A.W. was likely to cause serious physical, mental, emotional, or moral harm to the child. See OCGA § 15-11-94(b)(4)(A)(iv). We disagree and affirm.
On appeal from an order terminating parental rights, we view the evidence in the light most favorable to the juvenile court's ruling and determine whether any rational trier of fact could have found by clear and convincing evidence that the natural parent's right to custody should be terminated. We do not weigh the evidence or determine the credibility of the witnesses, and we defer to the juvenile court's factfinding.
(Citation omitted.) In the Interest of A.S.R.H., 265 Ga.App. 30, 31, 593 S.E.2d 59 (2004).
So viewed, the evidence shows that two days after C.A.W. was born, the juvenile court issued an emergency intake order placing him in the temporary custody of the Tift County Department of Family and Children Services. According to the order, both the mother and C.A.W. had tested positive for cocaine. Several weeks later, the Georgia Department of Human Resources (the Department) filed a petition for temporary custody alleging that C.A.W. was deprived. Following an evidentiary hearing, the juvenile court found C.A.W. to be deprived, and awarded temporary custody of C.A.W. to the Department. The deprivation order was not appealed.
The Department subsequently filed a petition for termination of the parental rights of the mother and putative father of C.A.W. The father was personally served with the petition while incarcerated in the Savannah jail. On August 26, 2003, the juvenile court held an evidentiary hearing on the petition to terminate parental rights. The father remained in jail at that time, and neither he nor the mother was present at the hearing.
The case manager for C.A.W. testified that a reunification case plan had been prepared for the mother and father, who were living together. The case plan required both parents to undergo a psychological evaluation, enter a drug treatment center, attend parenting classes, visit the child, remain drug and alcohol free for six months, and submit to random drug testing. According to the case manager, the father visited the child but failed to complete the other requirements of the case plan. The case manager referred him to a drug treatment facility, but he did not follow through on the referral. The father also failed to submit to random drug testing, take parenting classes, or appear for a scheduled psychological evaluation as required by the case plan. The mother entered a drug treatment facility, and C.A.W. was placed with the mother at the facility. However, the mother subsequently left the drug treatment program and abandoned the child at the facility. C.A.W. was then placed in foster care.
The case manager further testified that C.A.W. was doing well in the care of his foster mother, who provided him with a stable home, and that the foster mother wished to adopt the child. In the case manager's opinion, it would be detrimental for C.A.W. to be returned to his parents, and, based on the parents' failure to complete their case plan, including drug treatment, it would be detrimental for C.A.W. to have continued contact with his parents.
After the August 26, 2003 hearing, the juvenile court entered an order on September 4, 2003, purporting to terminate the parental rights of the mother and father. However, the Department filed a second termination petition against the father, and the *156 juvenile court proceeded as if the September 4, 2003 order terminated the rights of the mother, but not the father. The juvenile court subsequently entered a continuation order reciting that the father had appeared in person before the juvenile court, had expressed his intent to legitimate C.A.W., and had asked an attorney to be appointed to represent him. The order continued termination proceedings against the father until March 3, 2004. The proceedings were further continued until June 16, 2004, at which time the juvenile court conducted a second evidentiary hearing to consider termination of the father's parental rights. Three months before the June 16, 2004 hearing, the juvenile court granted the father's petition to legitimate C.A.W.
The father did not appear for the June 16, 2004 evidentiary hearing, but was represented at the hearing by his appointed counsel, who reported that the father was being held in a pretrial detention center in Florida. After taking judicial notice of previous deprivation orders with respect to the case, the juvenile court heard the testimony of two Department case managers. A second case manager testified that under his reunification case plan the father was required to legitimate C.A.W., which he did, and was required to seek drug treatment, complete a psychological evaluation, and maintain stable housing and employment, which he did not do. The father attended some scheduled visits with the child, but stopped visiting in January 2004. In this second case manager's opinion, the father was not able to maintain a familial bond with C.A.W. She testified the child would cry every time the father came into the room.
The juvenile court also heard the testimony of C.A.W.'s first case manager, who had also testified at the August 26, 2003 hearing. She testified that after the father was released from jail in Savannah he sent a letter to the Department asking that they "work with him ... in order that he can ... get the child." The father signed a case plan which required that he undergo a psychological evaluation and submit to a drug assessment and substance abuse program, but he failed to complete any of the case plan goals. The father also failed to support the child. The case manager further testified that the father visited C.A.W. after the mother abandoned the child, but that C.A.W. would cry every time the father visited. Following this testimony, C.A.W.'s guardian ad litem recommended that the father's parental rights be terminated "so this child can have some permanency."
The father's sole enumeration of error addresses the fourth requirement for showing parental misconduct or inability. See OCGA § 15-11-94(b)(4)(A)(iv). He does not contest that clear and convincing evidence showed C.A.W. was deprived, that lack of proper parental care or control was the cause of the deprivation, or that the cause of the deprivation was likely to continue. Nor does he directly challenge the juvenile court's finding that termination of his parental rights was in the best interest of the child. However, the father claims that evidence was insufficient to show that C.A.W.'s continued deprivation was likely to cause serious physical, mental, emotional or moral harm to the child. See OCGA § 15-11-94(b)(4)(A)(iv). We disagree.
Before terminating a parent's rights, a juvenile court must employ a two-step test:
First, there must be a finding of parental misconduct or inability, which requires clear and convincing evidence that: (1) the child is deprived; (2) the lack of proper parental care or control is the cause of the deprivation; (3) the cause of the deprivation is likely to continue; and (4) continued deprivation is likely to cause serious physical, mental, emotional, or moral harm to the child. If these four factors exist, then the court must determine whether termination of parental rights is in the best interest of the child, considering the child's physical, mental, emotional, and moral condition and needs, including the need for a secure, stable home.
(Footnote omitted.) In the Interest of T.B., 249 Ga.App. 283, 285-286(1), 548 S.E.2d 45 (2001).
The juvenile court found, and evidence showed, that C.A.W.'s father failed to maintain a familial bond with the child. The *157 father stopped visiting the child in January or February 2004 and generally ignored his case plan requirements for reunification with the child. Moreover, C.A.W. reacted so negatively when he was in contact with his father that a parental aide was constantly required to go the visitation room to comfort the child. The juvenile court also found, and evidence showed, that C.A.W. had been placed in a stable foster home, and was doing well there. The foster parent wished to adopt the child, and the juvenile court's order reflects that custody of C.A.W. was to be placed with the Department for purposes of adoption. We have previously held that where evidence showed no parental bond between parent and child, the child had adapted well to foster care, and the foster parent wished to adopt, this was sufficient to support the juvenile court's conclusion that continued deprivation was likely to harm the child. In the Interest of J.K., 239 Ga.App. 142, 146(1), 520 S.E.2d 19 (1999); In the Interest of A.C., 230 Ga.App. 395, 398(1), 496 S.E.2d 752 (1998). Consistent with the foregoing authority, we find the juvenile court was authorized to conclude that clear and convincing evidence showed C.A.W. would likely suffer serious physical, mental, emotional, or moral harm from his continued deprivation. We further conclude that any rational trier of fact could have found by clear and convincing evidence that the father's parental rights should be terminated.
Judgment affirmed.
BLACKBURN, P.J., and BERNES, J., concur.