611 S.E.2d 766 (2005)
272 Ga. App. 165
In the Interest of A.C., a child.
No. A05A0806.
Court of Appeals of Georgia.
March 11, 2005.
*767 Thomas M. Witcher, Bremen, for Appellant.
Thurbert E. Baker, Attorney General, Shalen S. Nelson, Senior Assistant Attorney General, Charissa A. Ruel, Assistant Attorney General, Evan L. Stapler, for Appellee.
MILLER, Judge.
The juvenile court terminated the mother's parental rights to four-year-old A.C. The *768 mother appeals, claiming the trial court erred by finding clear and convincing evidence that (i) the deprivation of A.C. was likely to continue and (ii) continued deprivation was likely to cause serious physical, mental, emotional, or moral harm to the child. The mother also claims the trial court erred in terminating her parental rights to A.G. because she was not given sufficient opportunity to comply with her reunification plan. We find no error and affirm.
A juvenile court's termination of parental rights is a two-step process:
The first step requires a finding of parental misconduct or inability, which requires clear and convincing evidence that: (1) the child is deprived; (2) lack of proper parental care or control is the cause of the deprivation; (3) such cause of deprivation is likely to continue; and (4) the continued deprivation mill cause or is likely to cause serious physical, mental, emotional, or moral harm to the child. If these four factors are satisfied, the court must then determine whether termination of parental rights is in the child's best interest, considering physical, mental, emotional, and moral condition and needs, including the need for a secure and stable home.
(Footnotes omitted.) In the Interest of T.F., 250 Ga.App. 96, 97-98(1), 550 S.E.2d 473 (2001). See OCGA § 15-11-94(a), (b)(4)(A)(i)-(iv). "On appeal from a termination order, this Court views the evidence in the light most favorable to the appellee and determines whether any rational trier of fact could have found by clear and convincing evidence that the biological parent's rights to custody have been lost." (Footnote omitted.) In the Interest of F.C., 248 Ga.App. 675, 549 S.E.2d 125 (2001).
1. Parental misconduct or inability. Construing the evidence in a light most favorable to the juvenile court's findings, we address the aforementioned factors.
(a) Deprivation. In October 2002, the juvenile court found by clear and convincing evidence that A.C. was a deprived child and ordered that A.C. be placed in the temporary custody of the Georgia Department of Human Resources (the "Department") through its agent the Haralson County Department of Family and Children Services. The juvenile court found the cause of deprivation to be the mother's incarceration and inability to provide a home for the child. The mother does not contest that A.C. is a deprived child, and the deprivation order was not appealed. The mother is therefore bound by its finding of deprivation for purposes of the termination hearing. In the Interest of R.G., 249 Ga.App. 91, 93(1)(a), 547 S.E.2d 729 (2001).
(b) Lack of parental care or control. In its order finding that A.C. was a deprived child, the juvenile court also concluded that A.C. was "without proper parental care or control, subsistence, [or] education as required by law, or other care or control necessary for [his] physical, mental or emotional health or morals." The mother does not contest that A.C. is without proper parental care or control.
(c) Lack of care or control likely to continue. In November 2003, the Department filed a petition to terminate the mother's parental rights to A.C. The juvenile court held an evidentiary hearing in May 2004 to consider the Department's petition. The juvenile court subsequently found clear and convincing evidence that A.C.'s deprivation was likely to continue in the future.
A.C. was brought to the Department's attention in August 2002 after he was hospitalized with a drug overdose while living with his aunt. The mother was in jail at the time. She was released in early November. Shortly thereafter, the mother met with A.C.'s caseworker to discuss her case plan for reunification with A.C. The mother scheduled a visit with the child for the following week but failed to appear.
On January 2, 2003, the mother violated her probation by using cocaine, and she was again incarcerated. She was released in November 2003 and appeared for a scheduled visit with A.C. that month. During the visit *769 A.C. did not recognize his mother, did not respond to her, and cried for his foster parent when left alone with the mother. Although additional visitations were scheduled, the mother did not visit A.C. again, and A.C. told his foster parent that he did not want to visit his mother again.
The mother had four other children, one of whom was born while the mother was in jail. Two of the children were placed in the Department's care for medical neglect. The mother failed to complete her case plan or to maintain regular visitation with respect to these children, and her parental rights were terminated as to them. The mother's other two children were living in Alabama, and the Cleburne County Department of Human Resources was pursuing termination of the mother's parental rights with respect to those children at the time of the Georgia termination hearing. When asked if the mother had made "zero progress" on her case plan, the Alabama caseworker responded that the mother had "never walked into my office."
Although the mother's imprisonment does not compel a termination of her parental rights, her repeated incarcerations are an aggravated circumstance which may be considered in determining whether A.C.'s deprivation is likely to continue. In the Interest of B.C., 235 Ga.App. 152, 154, 508 S.E.2d 774 (1998). In addition, evidence that the mother had four other children who were not in her care or support indicates that she would be unable to care for A.C. In the Interest of S.L.B., 265 Ga.App. 684, 688(1), 595 S.E.2d 370 (2004). A rational trier of fact could thus find clear and convincing evidence that A.C.'s deprivation was likely to continue. Id.
(d) Continued deprivation likely to cause serious physical mental, emotional, or moral harm to the child. There is no evidence that the mother had any significant relationship with A.C. She visited with him only once during the time the Department bad custody of A.C., and A.C. did not respond to her. There was evidence that A.C. was doing well in his foster home, and the foster mother wished to adopt him. The failure of a parent to maintain a familial relationship with the child, along with evidence showing the child is doing well in foster care and that the foster family wishes to adopt the child, will support a juvenile court's finding that continued deprivation is likely to cause serious physical, mental, emotional, or moral harm to the child. In the Interest of J.K., 239 Ga.App. 142, 146(1), 520 S.E.2d 19 (1999); In the Interest of A.C., 230 Ga.App. 395, 398(1), 496 S.E.2d 752 (1998). Furthermore, A.C.'s caseworker testified that a child lingering in foster care is in danger of developing attachment issues, depression, and a lack of trust of adults, and may become involved, with the juvenile justice system, among other harmful tendencies. See In the Interest of B.L.H., 259 Ga.App. 482, 485(1), 578 S.E.2d 143 (2003) (caseworker testified that continued deprivation would likely cause child harm). Accordingly, the juvenile court was authorized to conclude that clear and convincing evidence showed A.C. would likely suffer serious physical, mental, emotional, or moral harm from his continued deprivation.
2. Best interest of the child. After finding clear and convincing evidence of parental misconduct or inability, the juvenile court considers whether termination of parental rights is in the best interest of the child, in light of the physical, mental, emotional, and moral condition and needs of the child, including the need for a secure and stable home. See OCGA § 15-11-94(a). "The same evidence showing parental misconduct or inability may, and here does, establish this requirement." (Citation and punctuation omitted.) In the Interest of J.B.A., 230 Ga.App. 181, 185(2), 495 S.E.2d 636 (1998). Given the mother's history of incarceration and inability to care for her children, as well as the progress A.C. has made in his foster home and the foster parent's desire to adopt the child, the trial court did not abuse its discretion in finding that termination of the mother's parental rights was in the child's best interest. See In the Interest of M.L.P., 236 Ga.App. 504, *770 510(1)(d), 512 S.E.2d 652 (1999) (juvenile court has broad discretion in determining how the interest of the child is best served).
3. Finally, the mother claims that the juvenile court erred in terminating her parental rights because she was not given an opportunity to comply with the reunification plan. See In the Interest of D.L., 268 Ga.App. 360, 364(3), 601 S.E.2d 714 (2004). The mother contends that she was unable to comply with the reunification plan because she was in jail during the majority of the period A.C. was in Department custody. The mother was in jail due to her voluntary decision to violate the terms of her parole, however, and the Department did not deny her the opportunity to comply with the case plan. Accordingly, the mother's argument has no merit. See id. at 365, 601 S.E.2d 714 (where father was in jail and refused to cooperate with the Department, termination of father's parental rights was in child's best interest although full year had not passed since case plan was proposed).
Judgment affirmed.
BLACKBURN, P.J., and BERNES, J., concur.