## 32782. COLEMAN v. COLEMAN.

UNDERCOFLER, Presiding Justice.

Charles Hamilton Coleman, Jr., appeals from the judgment entered in the divorce proceedings brought by him against his wife, Jan Awtrey Coleman, now Pettys. His main complaint is that Jan Coleman should not have received alimony and attorney fees because her right was barred by adultery and because she remarried prior to entry of the final judgment.

Charles Coleman filed his petition in January, 1976, alleging adultery and the no fault grounds for divorce.

Jan Coleman also asked for a no fault divorce, alimony, child custody and support, and attorney fees. The divorce was granted on the pleadings on June 24, 1976, with the other issues reserved for trial, and Jan Coleman remarried on July 18, 1976. The final decree on the other issues was entered on December 7, 1976, nunc pro tunc as of June 24, 1976.

1. The first issue is whether the court erred in entering the final judgment nunc pro tunc as of June 24, 1976, the date the divorce on the pleadings was granted on the no fault ground. We agree with Charles Coleman that this was erroneous. "A nunc pro tunc entry is for the purpose of recording some action that was taken or judgment rendered previously to the making of the entry, which is to take effect as of the former date. Such an entry can not be made to serve the office . . . of supplying non-action on the part of the court." *Pendergrass v. Duke,* 147 Ga. 10 (2) (92 SE 649) (1917). Accord, *Beatty v. Underground Atlanta,* 237 Ga. 844 (229 SE2d 615) (1976); *Adams v. Payne,* 219 Ga. 638 (135 SE2d 423) (1964); *Stubbs v. Mendel,* 148 Ga. 802 (98 SE 476) (1918). Since the trial court did not decide the reserved issues until December, he may not enter them as of the previous June. The trial court erred in providing that the judgment should be entered nunc pro tunc and this provision is stricken. The order is deemed effective as of its entry on December 7, 1976.

Enumeration of error 3 insofar as the trial court's order is entered nunc pro tunc is meritorious.

2. Charles Coleman argues that since Jan Coleman had already remarried she can not receive alimony under Code Ann. § 30-209,[1] which provides that all alimony obligations cease upon remarriage. It is clear from the trial court's order that no lump sum or periodic payments

---

[1] Code Ann. § 30-209 provides in pertinent part: "All obligations for permanent alimony to the wife, whether created by contract, verdict, judgment, or decree, the time for performance of which has not yet arrived, shall cease upon her remarriage unless otherwise provided in the decree."

were awarded as alimony to Jan Coleman.[2] She did, however, receive the house and most of the furnishings and one of the family cars as well as attorney fees.[3]

Whether these property awards were intended as alimony or property division is not entirely clear. But Jan Coleman requested only alimony, and not a property division, in her pleadings, while Charles Coleman petitioned for "equitable property division." The house has since been sold and the debts liquidated leaving $761.38 in escrow pending decision by this court. Since we have ruled that the trial court erred in making the permanent alimony award nunc pro tunc and because Jan Coleman was already remarried when the decree was entered, the award of the house, furnishings, and car as permanent alimony would not be authorized.[4] Code Ann. § 30-209, supra. Additionally, these items are not properly construed as child support. *Collins v. Collins,* 231 Ga. 683 (203 SE2d 524) (1974); *Clark v. Clark,* 228 Ga. 838 (188 SE2d 487) (1972). However, since the trial court specifically declined to grant Jan Coleman either periodic or lump sum alimony we conclude that the house, furnishings and car were granted to Jan Coleman as property division prayed for by Charles Coleman.

Although there is little evidence[5] in the record or transcript tending to show specifically whether Jan

---

[2] "I award no sums to the defendant as lump sum or periodic payments."

[3] He claims additionally that her adultery also bars her claim to this property and attorney fees. This contention is discussed in Division 3, infra.

[4] It is therefore unnecessary to reach the questions raised by Charles Coleman concerning the applicability of *Anderson v. Anderson,* 237 Ga. 886 (230 SE2d 272) (1976), and the retroactivity of the 1977 Act. Code Ann. § 30-201 (Supp. 1977) (Ga. L. 1977, p. 1253).

[5] Charles Coleman testified that Jan Coleman had a 1967 Camaro given to her by her father when they married and that they bought a 1974 Monte Carlo with money given to him as a graduation gift by her parents. He was granted the Camaro; she, the Monte Carlo.

Coleman owned some or all of these items, jointly or personally, she alleged in her complaint "that during the marriage between herself and the Plaintiff, that she worked at the Medical College of Georgia and used the proceeds of her employment for the purpose of maintaining a home for herself and her husband and to defray a portion of his expense as a medical student." In addition, the testimony was elicited, which proved that her father gave them substantial amounts of money and other items. In the decree, Charles Coleman was awarded certain personal property, including some wedding gifts from his family. Therefore, we construe the grant of the house, car,[6] and furnishings as property division. Since Charles Coleman requested an "equitable property division," he may not now complain that his prayer was granted. See *Printup v. Smith,* 212 Ga. 501 (93 SE2d 679) (1956). The judgment of the trial court awarding the house, car and furnishings to Jan Coleman is affirmed.

Similarly, the award of attorney fees does not fail as unauthorized alimony, because attorney fees are a part of temporary, rather than permanent, alimony. Code Ann. § 30-202. "A provision for temporary alimony is somewhat different in character and purpose from an award of permanent alimony, inasmuch as it is designed to meet the exigencies arising out of the domestic crisis of a pending proceeding for divorce. Therefore it takes into account the peculiar necessities of the wife, and provides her the means with which to contest all of the issues between herself and her husband. *Twilley v. Twilley,* 195 Ga. 297, 298 (24 SE2d 46) [1946]." *Childs v. Childs,* 203 Ga. 9 (3) (45 SE 418) (1947). Attorney fees and temporary alimony were specifically requested by Jan Coleman, and thus were appropriately awarded to her. *Bradley v. Bradley,* 233 Ga. 83 (210 SE2d 1) (1974).

Charles Coleman also contends that the amount granted, $9,000, is excessive. This is a question addressed to the sound discretion of the trial court. Its judgment will not be disturbed unless this discretion has been abused. *Bradley v. Bradley,* supra; *Childs v. Childs,* supra. The

---

[6] The house and car were in both of their names.

trial court heard evidence on this point and awarded half of the amount prayed for. In light of the number of depositions and long trial transcript, it is evident that the issues were hotly contested and that the trial court has not abused its discretion. Enumerations of error 2 and 4 thus have no merit.

3. The husband, Charles Coleman, Jr., also claims that Jan Coleman's alimony and attorney fees are barred by adultery, and in Enumeration 7, he faults the trial court, as the trier of fact, in failing to find as a fact that she had committed adultery. As to the latter, the trial court considered all the evidence and refused to find any more than an inference of misconduct on Jan Coleman's part.[7] Under the any evidence rule, this court must affirm such a finding. Because of our ruling in Division 2 that no permanent alimony was awarded, we need not reach the adultery question as to alimony.

Furthermore, Code Ann. § 30-205[8] authorizes, but does not mandate, the trial court in using its discretion to consider the cause of separation in awarding temporary alimony. See generally *Wilbanks v. Wilbanks,* 238 Ga. 660 (234 SE2d 915) (1977). Therefore, the attorney fees were properly awarded in the exercise of that discretion.

Enumerations of error 2, 3, 4, 7, and 8 have been decided by our decisions in Divisions 1, 2 and 3 of this opinion, except for the question of who is liable for the mortgage on the house. Since it has been sold and the mortgage satisfied, this issue is moot.

4. In Enumerations 5 and 6, Charles Coleman

---

[7] "Although there was circumstantial evidence that would authorize drawing [sic] of different inferences, I do not find that there was proof of adultery so as to deny defendant alimony as a matter of law."

[8] Code Ann. § 30-205 provides: "On application for temporary alimony, the merits of the cause are not in issue, though the judge, in fixing the amount of alimony, may inquire into the cause and circumstances of the separation rendering the alimony necessary, and in his discretion may refuse it altogether."

contends the trial court erred in failing to make findings of fact regarding his ability to pay and Jan Coleman's remarriage. The findings of fact are adequate to support the trial court's conclusions of law. In our opinion, more specific findings would not have affected the result reached. See *Collins v. Collins,* supra.

5. Charles Coleman contests in Enumeration 9 the establishment of an education trust fund as beyond the authority of the trial court. The trust will be completely paid by the children's sixteenth birthdays and any unused funds will revert to Dr. Coleman if the child has not entered an institution of higher learning by age 22.

Generally a father is not liable for child support past the age of majority. "Until majority, it is the duty of the father to provide for the maintenance, protection, and education of his child." Code Ann. § 74-105. See also Code Ann. § 30-207; *Newsome v. Newsome,* 237 Ga. 221 (227 SE2d 347) (1976). "[O]nce a divorce decree is entered awarding custody of the child to the mother, the husband's obligation of support for the child can be made a requirement of the decree. *Brown v. Brown,* 132 Ga. 712, 715 (64 SE 1092) [1909]. The trial court therefore has jurisdiction to include in the decree a provision for educational funds including expenses for attending a college *during minority* where the circumstances of the case warrant it.[9] *Fitts v. Fitts,* 231 Ga. 528 (202 SE2d 414) [1973]; *Bateman v. Bateman,* 224 Ga. 20 (159 SE2d 387) [1968]; *Moody v. Moody,* 224 Ga. 13 (159 SE2d 394) [1968]. However, *any such obligation imposed by the decree terminates when the child reaches majority or marries.* E.g., *Golden v. Golden,* 230 Ga. 867, 868 (199 SE2d 796) [1973]." *Jenkins v. Jenkins,* 233 Ga. 902 (214 SE2d 368) (1975). (Emphasis supplied.) In *Jenkins* the age of majority was 21. At that time, it was possible to complete four years of college prior to turning 21. The age of

---

[9] Depending on the family's life style and economic situation, a college education may be considered a necessity under Code Ann. § 74-105. *Fitts v. Fitts,* supra. (Footnote added.)

majority is now 18, and this is no longer so. "A requirement to provide child support beyond the age of majority may not, as a matter of law, be imposed." *Clavin v. Clavin,* 238 Ga. 421, 422 (233 SE2d 151) (1977). Accord, *Golden v. Golden,* supra. Compare *Goodrum v. Fuller,* 237 Ga. 833 (229 SE2d 639) (1976); *Anderson v. Powell,* 235 Ga. 738 (221 SE2d 565) (1975); *McClain v. McClain,* 235 Ga. 659 (221 SE2d 561) (1975), where the husband contracted as part of a divorce settlement to pay college expenses beyond the age of majority.

The trust fund established in this decree is to be paid during the minority of the Colemans' two children. However, the uses contemplated clearly extend beyond the age of 18, as is evidenced by the reverter provision where a child does not enter such an institution before age 22. We hold that this requirement is an attempt to circumvent the statutory limitations on the duty to support and is void and unenforceable.[10] Anything to the contrary in *Fitts v. Fitts,* supra, is hereby disapproved.

As in *McGarr v. McGarr,* 239 Ga. 640 (1977), we grant leave to Jan Coleman to write off the paragraph establishing the educational trust from the decree which will then be affirmed with the exception of the nunc pro tunc provision ordered deleted in Division 1 of this opinion, otherwise a new trial is ordered on the issue of child support. Code Ann. §§ 110-105, 110-112. Unlike the wife in *McGarr,* however, Jan Coleman is not entitled, under the facts of this case, to a new trial as to permanent alimony. See Division 2 of this opinion.

*Judgment affirmed in part, reversed in part. All the Justices concur, except Nichols, C. J., Hall and Hill, JJ., who dissent from the ruling that remarriage bars a lump sum permanent alimony award.*

Argued October 11, 1977 — Decided December 5, 1977 — Rehearing denied December 19, 1977.

---

[10] In *McGarr v. McGarr,* supra, the appellant raised only the evidentiary issue. Therefore, this case is distinguishable, and stands only for the proposition that the evidence did not support the verdict on the college education trust.

Randall Evans, Jr., Samuel F. Maguire, W. M. Fulcher, Max Rubenstein, for appellant.

Awtrey, Parker, Risse, Mangerie & Brantley, A. Sidney Parker, McGahee, Plunkett, Benning & Fletcher, Paul K. Plunkett, for appellee.

HILL, Justice, dissenting.

In November, 1974, in *Friedman v. Friedman*, 233 Ga. 254 (210 SE2d 754) (1974), this court held that a divorce could be granted before trial on motion for judgment on the pleadings and that the issue of permanent alimony could be tried later. Prior to that time the issues of divorce and permanent alimony almost universally were decided at the same time. Thus the problem which has arisen here could not have arisen` before and without *Friedman v. Friedman,* supra.

We are now called upon to decide what happens to a wife's right to alimony when, after a pre-trial divorce, she remarries before the alimony trial. We have not heretofore decided this issue as it usually is the husband who remarries before the alimony trial.

A wife can recover in a divorce case in two ways: (1) permanent alimony, and (2) property division. *McLane v. McLane,* 224 Ga. 748 (164 SE2d 821) (1968); Code §§ 30-201, 30-209.

(1) Permanent alimony may be recovered in (a) periodic payments or (b) lump sum. *Eastland v. Candler,* 226 Ga. 588 (176 SE2d 89) (1970). Lump sum permanent alimony may be ordered paid in money or property (real or personal). For example, the household furnishings may be awarded to the wife as alimony.

(2) In order for there to be a property division, the wife (or husband) must show that title is or should be in the party claiming the property. *McLane v. McLane,* supra. Although there could be a property division of a sum of cash (e.g., a bank account), see *Holloway v. Holloway,* 233 Ga. 631 (212 SE2d 809) (1975), a property division more often occurs as to tangible property. *McLane v. McLane,* supra. It is sometimes difficult to distinguish between a property division of tangible

property or a lump sum alimony award of property. See *Holloway v. Holloway;* supra; *Crawford v. Schelver,* 226 Ga. 105 (172 SE2d 686) (1970).

In the case before us, the majority hold that where the divorce decree is entered before trial and the wife remarries before permanent alimony is awarded, there can still be a property division but there can be no permanent alimony, not even a lump sum property payment.

The tragic result of the majority decision is that the husband will be able to prevent the remarried wife from keeping the clothes on her back unless she can show title to her garments. Even if she can show title, we should not put such a weapon in the hands of her husband and we should not burden trial courts with the necessity of hearing evidence as to the title to every stick of furniture in the house. We should hold that after a wife's remarriage, although the trial court cannot enter a meaningful periodic alimony award, it can still enter a lump sum alimony award.

The majority cite Code § 30-209 for the proposition that the obligation for permanent alimony ceases upon the wife's remarriage. That provision, first enacted in 1966, Ga. L. 1966, p. 160, did not foresee this court's *Friedman* decision. That provision did, however, end with "unless otherwise provided in the decree." I would find that the trial court's reservation, in the pre-trial divorce decree, of jurisdiction to enter a later alimony award preserved the court's jurisdiction to do what it said notwithstanding the wife's remarriage (i.e., the reservation of jurisdiction constituted an "otherwise provided in the decree"). This would enable the wife to keep her unmentionables as alimony without having to prove in court her title to each and every one of them.

I am authorized to state that Chief Justice Nichols and Justice Hall join in this dissent.