A03A2359. IN THE INTEREST OF A. S. R. H., a child.
(593 SE2d 59)

ANDREWS, Presiding Judge.

The mother of A. S. R. H. appeals from the juvenile court's termination of her parental rights. After reviewing the record, we conclude there was no reversible error and affirm.

The evidence at the termination hearing, viewed in the light most favorable to the juvenile court's ruling, was that the paternal grandparents brought a private deprivation petition against the mother of A. S. R. H. when the child was eight months old. The child was found to be deprived on June 26, 2001, and custody was placed with the paternal grandmother. When the grandparents took custody of the child, she had not been bathed for some time, smelled bad, and had a diaper rash that was raw and bloody in spots. The grandmother allowed the child to live with her father and stepmother and that continues to be her home.

The deprivation order required the mother to maintain stable housing for six months, find and keep a job for at least six months, visit the child regularly, pay child support, successfully complete a drug treatment program, and have six months of negative drug screens.

After the child was removed from her care, the mother seldom visited her; and when she did schedule a visit, she would arrive late,

sometimes bringing a friend, and sometimes not keeping the scheduled visit at all. In August 2002, the grandmother stopped allowing the mother to visit. The mother testified that in June 2001, at the time the child was found to be deprived, she had a drug problem, and this drug problem continued until approximately five months before the termination hearing. At the time of the hearing, the mother had worked for three months between June 2001 and April 15, 2003, and made three child support payments during that time.

The mother was arrested for trafficking in methamphetamine and pled guilty to felony possession of methamphetamine on December 6, 2002. She was sentenced to seven years probation. At the time of the hearing, the mother stated that she was in court-ordered rehabilitation and also that she had been working full time for about a month.

There was evidence that the child had not bonded with her mother. The grandmother testified that her son's present wife was the only mother the child had ever known and she wanted to adopt her. The mother testified that she did not know anything about the child and she was not ready for custody of the child at that time.

The guardian ad litem testified that he observed the meeting between the mother and child just before the termination hearing. At that visit, the child stayed in the lap of her stepmother or standing beside her stepmother and did not go to her mother. The mother gave the child an inappropriate amount of candy and the stepmother had to intervene. The guardian ad litem stated that he was concerned about the mother's past drug use. He noted that there had been some recent changes in the mother's behavior but this had only been "in the context of a controlled environment which was forced by the Court." Also, the mother had not bonded with the child and had no relationship with the child. The guardian then recommended that the court grant the termination petition.

After the hearing, the juvenile court entered an order terminating the mother's parental rights. This appeal followed.

On appeal from an order terminating parental rights, we view the evidence in the light most favorable to the juvenile court's ruling and determine whether any rational trier of fact could have found by clear and convincing evidence that the natural parent's right to custody should be terminated. We do not weigh the evidence or determine the credibility of the witnesses, and we defer to the juvenile court's factfinding. *In the Interest of J. M. M.*, 244 Ga. App. 171 (534 SE2d 892) (2000).

OCGA § 15-11-94 (a) sets forth a two-step process to be used in termination of parental rights cases. First, the trial court determines "whether there is present clear and convincing evidence of parental misconduct or inability." Id. Four factors must be present to establish

parental misconduct or inability: (1) the child must be deprived; (2) the lack of proper parental care or control by the parent in question must cause the deprivation; (3) the cause of the deprivation must be likely to continue; and (4) continued deprivation must be likely to cause the child serious physical, mental, emotional, or moral harm. OCGA § 15-11-94 (b) (4) (A) (i)-(iv). If the trial court finds that these four factors exist, then the court determines whether termination of parental rights is in the best interest of the child. *In the Interest of J. K.*, 239 Ga. App. 142, 144 (520 SE2d 19) (1999).

1. The mother claims there was no clear and convincing evidence that the deprivation would likely continue or that the child would be harmed if the mother's parental rights were not terminated. We disagree.

In determining whether conditions of deprivation are likely to continue and would cause harm to the child, the court may consider the past conduct of the parent. *In the Interest of R. D. S. P.*, 230 Ga. App. 205, 207 (495 SE2d 867) (1998). The evidence at the termination hearing was that when the child was taken from the mother, she was dirty and had a severe diaper rash. After the child was removed from her care, the mother seldom visited her. The mother continued to use drugs and did not enter rehabilitation until ordered to do so by the court. She began sending child support payments only after being served with the termination petition. Although the mother stated that she had changed her way of life and had not used drugs in five months, her past drug use and criminal incarceration evidence a patent disregard for the child's welfare and the likelihood that the pattern of deprivation will continue. *In the Interest of J. K.*, supra at 146.

There is also evidence to support the juvenile court's finding that the continued deprivation will likely harm the child. The mother acknowledges that the child is not bonded to her and she knows nothing about the child. The evidence was that the child had bonded to her father and his present wife. Accordingly, this supports the court's finding that the child would suffer harm if returned to the mother. See *In the Interest of J. K.*, supra at 146; *In the Interest of A. C.*, 230 Ga. App. 395, 398 (496 SE2d 752) (1998).

2. The mother also contends that the trial court erred in finding that termination was in the best interest of the child.

> Once the trial court establishes a lack of parental care and control, the second part of the test for determining whether parental rights should be terminated is whether such termination is in the best interest of the child, after considering the physical, mental, emotional, and moral condition and needs of the child who is the subject of the proceeding,

including the need for a secure and stable home. OCGA § 15-11-94 (a).

(Punctuation omitted.) *In the Interest of T. W.*, 255 Ga. App. 674, 676-677 (566 SE2d 405) (2002). In determining whether termination is in the child's best interest, the same evidence showing parental misconduct or inability may establish this requirement. *In the Interest of B. L. H.*, 259 Ga. App. 482, 485 (578 SE2d 143) (2003). The evidence discussed in Division 1 above, including the child's need for a secure and stable home environment, supports a finding that termination is in the best interest of the child. See *In the Interest of J. K.*, supra at 146. Compare *In the Interest of K. M.*, 240 Ga. App. 677, 680-681 (523 SE2d 640) (1999) (termination not in best interest of child because ten-year-old had a strong emotional attachment to her mother).

3. Next, the mother argues that the termination order contains clearly erroneous findings of fact. First, she states that she was not "convicted" of trafficking in methamphetamine. The order is correct, however, when it states that she was arrested for trafficking in methamphetamine. The order then states that she pled guilty and was sentenced. This is also correct. Although she pled guilty to felony possession of methamphetamine and not trafficking, the error, if any, was harmless.

Next, the mother claims the trial court erred in finding that the grandmother stopped her visits with the child because she found out that the mother was using drugs. There was no error because this finding is supported by the record.

The mother states that the court erred in finding that she failed to maintain employment when there was evidence that she worked for two months in 2002. Because the mother only worked for two months from June 2001, until four weeks before the termination hearing on April 15, 2003, the juvenile court correctly found that she failed to maintain employment.

Next, the mother argues that, contrary to the court's finding, she did seek treatment for her drug use before the court's order requiring treatment. The mother did state at the termination hearing that she went to Narcotics Anonymous, but did not say whether she went to one meeting or several and produced no evidence to support the statement. In any event, this does not alter the juvenile court's finding that the mother failed to successfully complete a drug treatment program and to produce six months of negative drug screens.

The mother also argues that, contrary to the court's order, she did make one $50 child support payment in August 2002. The transcript shows that the mother testified that the first child support payment she made was March 20, 2003. Although there was some evidence that the mother had made a $50 payment at some point

before this, that does not change the conclusion that the mother had not complied with the requirement to make regular child support payments.

We disagree with the mother's contention that the court erred in finding she made "no attempt" to comply with the deprivation order. The evidence shows, as discussed above, that the mother made no meaningful attempt to comply with the deprivation order.

4. The mother claims the juvenile court erred in denying her motion for continuance of the termination hearing. She argues that because she did not receive a copy of the amended petition to terminate until just before the hearing, it was error for the trial court to deny her motion for continuance.

"All applications for continuances are addressed to the sound legal discretion of the court and, if not expressly provided for, shall be granted or refused as the ends of justice may require." (Punctuation omitted.) *In the Interest of A. H. P.*, 232 Ga. App. 330, 332 (500 SE2d 418) (1998). Here, the mother acknowledges that she was served a copy of the petition to terminate in December 2002, approximately four months before the hearing. The amended petition merely added the name of the paternal grandmother to the petition because she had legal custody of the child at the time. The court ruled that it would not hear anything not included in the original petition to terminate. Accordingly, the mother can show no harm as a result of the court's failure to grant a continuance. See id. at 333.

5. The mother next argues that the juvenile court lacked personal jurisdiction over her because the amended petition was never served on her. She cites to no authority and makes no argument in support of this claim, and we can discern none. Accordingly, this enumeration is abandoned.

6. The mother also argues that the juvenile court lacked subject matter jurisdiction over this case. She contends that this was a custody issue and should have been resolved in superior court.

But, as the mother acknowledges, it is undisputed that the child was deprived and that the mother's drug use was one of the causes of the deprivation. Moreover, the mother acknowledges that she is currently unable to care for the child. Accordingly, this was not a disguised custody dispute, but a valid deprivation proceeding within the jurisdiction of the juvenile court. *In re M. C. J.*, 271 Ga. 546, 547 (523 SE2d 6) (1999).

*Judgment affirmed. Barnes and Adams, JJ., concur.*

DECIDED JANUARY 6, 2004.

*Rodney Q. Quarles*, for appellant.
*Bruce A. Kling*, for appellee.