304 Ga. 114
FINAL COPY

S17G1391. IN THE INTEREST OF I. L. M. et al., children.

HINES, Chief Justice.

This Court granted certiorari to the Court of Appeals in the case of *In the Interest of E. G. M.*, 341 Ga. App. 33 (798 SE2d 639) (2017),[1] to determine whether the Court of Appeals erred in the manner in which it applied certain provisions of the Juvenile Code, OCGA § 15-11-1 et seq., pertaining to the juvenile court's decision to order a continuance of a dependency hearing. Finding that the Court of Appeals did err, we reverse the judgment of that Court.

In July 2015, the Juvenile Court of Cherokee County terminated the parental rights of a father and a mother as to their three minor children, I. L. M., I. T. M., and B. M. On October 8, 2015, in a separate case, the Cherokee County Department of Family and Children Services ("DFCS") filed a petition

---

[1] As presented to the Court of Appeals, this case involved two separate cases from the Juvenile Court of Cherokee County, both involving children of the same parents; case number A16A1768 pertained only to the child E. G. M., and Case No. A16A2045 pertained to three children, I. L. M., I. T. M., and B. M. Only the case pertaining to E. G. M. is encompassed in this Court's granted writ of certiorari.

alleging the parents' newly-born child E. G. M. to be dependent. See OCGA §

15-11-150 et seq.[2] That same day, the juvenile court entered a protective

custody order and appointed a guardian ad litem for E. G. M.; an adjudication

hearing on DFCS's petition was scheduled for October 22, 2015. At the hearing

on that date, all parties announced that they were ready to proceed. However,

the court, on its own motion and over the parents' objections, decided to

continue the hearing until a later date, and set the adjudication hearing for

November 18, 2015;[3] no written continuance order was entered at that time.

On November 13, 2015, the parents filed a joint motion to dismiss the

dependency petition, asserting that the juvenile court's decision to continue the

originally scheduled hearing of October 22, 2015 contravened the scheduling

provisions of OCGA §§ 15-11-110[4] and 15-11-181,[5] and that the court's order

---

[2] OCGA § 15-11-150 reads:

A DFCS employee, a law enforcement officer, or any person who has actual knowledge of the abuse, neglect, or abandonment of a child or is informed of the abuse, neglect, or abandonment of a child that he or she believes to be truthful may make a petition alleging dependency. Such petition shall not be accepted for filing unless the court or a person authorized by the court has determined and endorsed on the petition that the filing of the petition is in the best interests of the public and such child.

[3] The court later, on its own motion, rescheduled the hearing for November 17, 2015.

[4] OCGA § 15-11-110 reads:

(a) Upon request of an attorney for a party, the court may continue any hearing under

2

failed to meet OCGA § 15-11-110's requirements for granting a continuance. The juvenile court then, without request from any party, again continued the adjudication hearing, setting it for January 12, 2016;[6] again, no written order re-setting the adjudication hearing was entered at that time. The adjudication hearing was, in fact, held on January 12, 2016.

---

this article beyond the time limit within which the hearing is otherwise required to be held; provided, however, that no continuance shall be granted that is contrary to the interests of the child. In considering a child's interests, the court shall give substantial weight to a child's need for prompt resolution of his or her custody status, the need to provide a child with a stable environment, and the damage to a child of prolonged temporary placements.

(b) Continuances shall be granted only upon a showing of good cause and only for that period of time shown to be necessary by the evidence presented at the hearing on the motion. Whenever any continuance is granted, the facts proved which require the continuance shall be entered in the court record.

(c) A stipulation between attorneys or the convenience of the parties shall not constitute good cause. Except as otherwise provided by judicial rules governing attorney conflict resolution, a pending criminal prosecution or family law matter shall not constitute good cause. The need for discovery shall not constitute good cause unless the court finds that a person or entity has failed to comply with an order for discovery.

(d) In any case in which a child or his or her parent, guardian, or legal custodian is represented by an attorney and no objection is made to an order continuing any such hearing beyond the time limit, the absence of such an objection shall be deemed a consent to the continuance; provided, however, that even with consent, the court shall decide whether to grant the continuance in accordance with subsection (a) of this Code section.

[5] OCGA § 15-11-181 reads in pertinent part:

(a) The court shall fix a time for an adjudication hearing. If the alleged dependent child is in foster care, the hearing shall be scheduled for no later than ten days after the filing of the petition alleging dependency. If the alleged dependent child is not in foster care, the adjudication hearing shall be held no later than 60 days after the filing of the petition alleging dependency. If adjudication is not completed within 60 days from the date such child was taken into protective custody, the petition alleging dependency may be dismissed without prejudice. . . .

[6] Notice of of this hearing date was issued on January 5, 2016.

3

On January 22, 2016, the juvenile court executed a "Continuance Order," resetting the October 22, 2015 hearing to November 18, 2015; the order was entered "nunc pro tunc for October 22, 2015." And on February 11, 2016, the court executed an "Order Denying Parents' Joint Motion to Dismiss," in which it stated that E. G. M.'s case was not called until 3:30 p.m. on October 22, 2015, and the November 18, 2015 date to which it was reset was the next available court date, and concluded that "there was good cause to continue [the October 22, 2015 adjudication hearing] based upon the lengthy court docket, leaves of absence filed by attorneys,[7] and the Holiday schedule";[8] this order was entered "nunc pro tunc for January 12, 2016." Also on February 11, 2016, the court executed an "Order of Adjudication and Disposition" placing E. G. M. in the temporary custody of DFCS and establishing a reunification plan for the parents; this order too was entered "nunc pro tunc for January 12, 2016." The Court of Appeals affirmed the judgment of the juvenile court, including its orders that continued the adjudication hearing on the petition regarding E. G. M. and that

[7] No leaves of absence appear in the appellate record. The record contains a conflict notice for one attorney, filed on November 10, 2015, providing notice of a conflict on November 17, 2015.

[8] The record is devoid of any showing of a holiday that might have impacted the October 22, 2015 hearing date; holidays after that might have impacted the court's ability to continue the hearing to a date within the time required by OCGA § 15-11-181 (a).

4

denied the parents' motion to dismiss.  See *E. G. M.*, supra at 59-61 (5).

As to the entry of the written orders nunc pro tunc to an earlier date, generally, a trial court is authorized to do so.  "A nunc pro tunc entry is for the purpose of recording some action that was taken or judgment rendered previously to the making of the entry, which is to take effect as of the former date." *Coleman v. Coleman*, 240 Ga. 417, 418 (1) (240 SE2d 870) (1977) (Citations and punctuation omitted.)  Thus, the juvenile court is authorized to cause the written order to "relate back to . . . the date of the hearing and its oral ruling." *Hinkle v. Woolever*, 249 Ga. App. 249, 252, n. 1 (547 SE2d 782) (2001).  However, "[s]uch an entry can not be made to serve the office of supplying non-action on the part of the court." *Coleman*, supra.  While a nunc pro tunc order may record that which occurred at the earlier date, it is not a device to be used to alter a judgment previously made, or to add additional matters not decided in the prior ruling.  See *Maples v. Maples*, 289 Ga. 560, 561-562 (2) (713 SE2d 865) (2011).  Rather,

> the purpose of a nunc pro tunc entry is to record some previously unrecorded action actually taken or judgment actually rendered. It may not be used to supply an order not yet made by the court. A nunc pro tunc entry is an entry made now of something actually previously done to have effect of former date; office being not to

5

supply omitted action, but to supply omission in the record of action really had but omitted through inadvertence or mistake. The general rule is that nunc pro tunc entries are proper to correct clerical errors but not judicial errors. A clerical error involves an error or mistake made by a clerk or other judicial or ministerial officer in writing or keeping records; it does not include an error made by the court itself. To be clerical in nature it must be one which is not the result of judicial reasoning or determination.

*In the Interest of H. L. W.*, 244 Ga. App. 498, 498-499 (535 SE2d 834) (2000) (Citations and punctuation omitted.) Thus, if the juvenile court's ruling entered on January 22, 2016 nunc pro tunc to October 22, 2015, was based on matters not actually before the court and considered by it in deciding to continue the October 22, 2015 hearing, it would be an improper nunc pro tunc order.[9] Further, assuming that the order reflects a decision based on matters before the court at that hearing, that decision would nonetheless have to be made properly under the relevant statutes to authorize the Court of Appeals' affirmance of it.

OCGA § 15-11-181 (a) sets out time limits in which an adjudication hearing on a dependency petition must occur, and the adjudication completed,[10]

---

[9] The record does not contain a transcript of the October 22, 2015 hearing.

[10] OCGA § 15-11-181 (a) specifies that if the child alleged to be dependent is in foster care, the adjudication hearing is to be held no later than ten days after the filing of the petition alleging dependency. The juvenile court found that, as E. G. M. was taken into protective custody on October 8, 2015, the ten-day time limit applied, rather than the 60-day limit in which OCGA § 15-11-181 (a) requires the adjudication hearing to be held if the child is not in foster care. In any event, January

and OCGA § 15-11-110 governs the granting of a continuance of an adjudication hearing "beyond the time limit within which the hearing is otherwise required to be held." OCGA § 15-11-110 (a). A continuance is to be "granted only upon a showing of good cause and only for that period of time *shown to be necessary by the evidence presented at the hearing on the motion*." OCGA § 15-11-110 (b) (Emphasis supplied.) This shows a clear requirement that a departure from the statutory hearing schedule is to be ordered only for significant reasons, and only after considering evidence regarding the reasons that allegedly create the necessity.[11] That this mandate is to be strictly followed is also seen in OCGA § 15-11-110 (c)'s specifications that counsel stipulation and party inconvenience shall not be considered good cause, and that while a need for discovery may constitute good cause, a continuance may be granted only if there has been a failure to comply with a discovery order. Indeed, "a pending criminal prosecution or family law matter" may constitute good cause

---

12, 2016, the date of both the hearing and the nunc pro tunc entry of the order adjudicating E. G. M. as dependent, was more than 60 days after the October 8, 2015 filing of the petition alleging that E. G. M. was dependent.

[11] Although the statute requires a showing of good cause and "evidence" presented on the period of time shown to be necessary, and that these facts be entered in the court record, nothing in the statute prohibits the court from considering evidence already in the court's record.

only after consideration of "judicial rules governing attorney conflict resolution," OCGA § 15-11-110 (c), and even with counsel consent to a continuance, the court must "decide whether to grant the continuance in accordance with subsection (a) of this Code section," OCGA § 15-11-110 (d),[12] and place upon the record "the facts proved which require the continuance." OCGA § 15-11-110 (b).[13] Thus, OCGA § 15-11-110's requirements

---

[12] It is true that OCGA § 15-11-110 (a) refers to requests for continuances by "an attorney for a party" that would continue any hearing beyond the time limit within which the hearing is otherwise required to be held. Absent a clear statutory prohibition, we do not read the statute's silence as eliminating judges' ability to consider such a continuance sua sponte; we do, however, read the statute as guiding judges' exercise of discretion in granting such a continuance.

Every court generally has the "'inherent power . . . to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants.'" *Bloomfield v. Liggett & Myers, Inc.*, 230 Ga. 484, 485 (198 SE2d 144) (1973) (quoting *Landis v. North American Co.*, 299 U. S. 248, 254 (57 SCt 163, 81 LE 153) (1936)). Given how longstanding and inherent this judicial power is, we will not lightly find that a statute has eliminated it in a particular context without a clear statement to that effect by the General Assembly. No such statement is present here, and so we conclude that a judge may consider a continuance on his or her own initiative.

However, we have previously recognized the General Assembly's authority to guide or limit judges' exercise of the inherent power to control their dockets. See, e.g., *Ford v. Uniroyal Goodrich Tire Co.*, 267 Ga. 226, 229 (2) (476 SE2d 565) (1996) (reversing trial court for not complying with statute in which "legislature intended to limit the trial court's discretion to decide how cases on its docket are to be tried"). And that is precisely what the General Assembly has done in enacting the firm time limits of OCGA § 15-11-181 and the procedural and substantive finding requirements of OCGA § 15-11-110. As a result, if a judge wishes to continue a proceeding to which OCGA § 15-11-110 applies beyond the time limits of OCGA § 15-11-181, he or she must first comply with the requirements of OCGA § 15-11-110.

[13] The parents note OCGA § 15-11-110 (b)'s language that a continuance "shall be granted only upon a showing of good cause and only for that period of time shown to be necessary by the evidence presented at the hearing on the motion," and suggest that a separate hearing must thus be held on any motion to continue a dependency hearing. However, here the case was called and the parties were present and ready for a hearing when the court orally ruled that it would be continued,

significantly advance the purpose of "ensur[ing] that dependency proceedings are conducted expeditiously to avoid delays in permanency plans for children." OCGA § 15-11-100 (2).[14]

In its order denying the parents' motion to dismiss, the juvenile court addressed its prior decision to continue the October 22, 2015 hearing, and stated that it had "fully considered all requirements set forth in O.C.G.A. § 15-11-110."[15] The court also cited *In the Interest of D. T.*, 284 Ga. App. 336 (643 SE2d 842) (2007), for the principle that the hearing could be continued for "good cause." However, *In the Interest of D. T.* was decided under a former

---

and it appears that scheduling a separate hearing would not have been required, assuming that the facts then presented showed a continuance to be necessary.

[14] OCGA § 15-11-100 reads:
    The purpose of this article is:
        (1) To assist and protect children whose physical or mental health and welfare is substantially at risk of harm from abuse, neglect, or exploitation and who may be further threatened by the conduct of others by providing for the resolution of dependency proceedings in juvenile court;
        (2) To ensure that dependency proceedings are conducted expeditiously to avoid delays in permanency plans for children;
        (3) To provide the greatest protection as promptly as possible for children; and
        (4) To ensure that the health, safety, and best interests of a child be the paramount concern in all dependency proceedings.

[15] In its continuance order, the court stated it found "that the continuance is not contrary to the interests of the child as outlined in O.C.G.A. § 15-11-110."

9

version of the Juvenile Code and pertained to the treatment of a "deprived" child rather than a "dependent" child. In the 2013 enactment of the current Juvenile Code, the General Assembly set out "to substantially revise, supersede, and modernize provisions relating to juvenile proceedings and enact comprehensive juvenile justice reforms," Ga. L. 2013, p. 294, and a simple statutory change of definition from "deprived" to "dependent" was not the only alteration made. Indeed, at the time *In the Interest of D. T.* was decided, a juvenile court had statutory authority to grant a continuance in a deprivation hearing, see former OCGA § 15-11-56 (b),[16] but authority for the statement that it could do so for

---

[16] When the opinion of *In the Interest of D.T.*, supra, was issued, OCGA § 15-11-56 (b) read:

(b) *Continuances; scheduling*. On its own motion or that of a party, the court may continue the hearings under subsection (c) of Code Section 15-11-54 for a reasonable period to receive reports and other evidence bearing on the disposition of a child. In this event, the court shall make an appropriate order for protection of the child during the period of the continuance. In scheduling investigations and hearings, the court shall give priority to proceedings in which a child has been removed from his or her home before an order of disposition has been made.

See Ga. L. 2002, p. 1162, § 7. And at that time, OCGA § 15-11-54 read:

(a) *Findings*. After hearing the evidence on any petition alleging deprivation, the court shall make and file its findings as to whether the child is a deprived child. If the court finds that the child is not a deprived child, it shall dismiss the petition and order the child discharged from any detention or other restriction theretofore ordered in the proceeding.

(b) *Findings with regard to result of alcohol abuse or drug abuse*. If the court finds that a child is deprived, the court shall also make and file a finding as to whether such deprivation is the result of alcohol abuse or drug abuse by a parent or guardian.

(c) *Disposition*. The court shall proceed immediately or at a postponed hearing to make a proper disposition of the case in accordance with Code Section

10

"good cause" arose not from statute, but from Uniform Juvenile Court Rule

("UJCR") 11.3, which states, as it did in 2007, that upon motion "the court may

continue a hearing for a reasonable time upon good cause shown."[17] *In the*

15-11-55 if the court finds from clear and convincing evidence that the child is deprived.
See Ga. L. 2002, p. 1162, § 5.

[17] The opinion of the Court of Appeals in this case quotes from UJCR 11.3 that "the court may continue a hearing for a reasonable time upon good cause shown." *In the Interest of E. G. M.*, supra at 59 (5). In its entirety, the Rule reads:

RULE 11.3 CONTINUANCE
> On the motion of the court or that of a party, the court may continue a hearing for a reasonable time upon good cause shown. However, in cases involving allegations of deprivation the granting of continuances beyond the statutory limitations as defined in OCGA § 15-11-39 (a) shall be by written order and the specific reason for the continuance must be stated therein.

We note that the most recent amendment of UJCR 11.3 was to take effect August 16, 2001, at which time OCGA § 15-11-39 (a) read:

> (a) After the petition has been filed the court shall fix a time for hearing thereon, which, if the child is in detention, shall not be later than ten days after the filing of the petition. In the event the child is not in detention, the court shall fix a time for hearing thereon which shall be not later than 60 days from the date of the filing of the petition.

See Ga. L. 2002, p. 1162, § 3. Currently, OCGA § 15-11-39 (a) does not pertain to dependency hearings, and reads:

> In any jurisdiction within which a risk reduction program has been established, when a child comes before the court for disposition, the court may order that a risk assessment or risk and needs assessment, as defined in Code Section 49-4A-1, be made of such child and the circumstances resulting in such child being before the court.

Compare OCGA § 15-11-181 (a), which addresses the scheduling of dependency hearings.

> We note further that UJCR 11.3 continues to refer to "cases involving allegations of

deprivation." However, as part of its 2013 statutory overhaul of the Juvenile Code,

> the General Assembly amended the definitions applicable to juvenile proceedings. See Ga. L. 2013, p. 294, § 1-1; see also OCGA § 15-11-2 (codification of new definitions for juvenile proceedings). Effective January 1, 2014, the new definitions contained in OCGA § 15-11-2 became applicable to juvenile proceedings commenced on and after that date. Ga. L. 2013, p. 294, § 5-1 ("This Act shall

11

*Interest of L. A. E.*, 265 Ga. 698, 700 (1) (462 SE2d 148) (1995); *In the Interest of D. T.*, supra at 341 (3). And, in its 2013 enactment of OCGA § 15-11-110, the General Assembly not only incorporated "good cause" into the statute, but imposed specific requirements for the granting of continuances in dependency hearings.

Considerations of docket congestion may, in fact, constitute "good cause" justifying a continuance under OCGA § 15-11-110. The court's continuance order noted that the matter was not called on October 22, 2015 until "approximately 3:30 p.m. [and that the court had begun] its calendar at 8:30 a.m. with approximately twenty-three (23) cases on the calendar," recited that the court heard a lengthy detention hearing earlier on the calendar, and concluded that there was not sufficient time to complete the hearing that day. The court

become effective on January 1, 2014, and shall apply to all offenses which occur and juvenile proceedings commenced on and after such date."). The former definitions used the term "deprived" to mean a child who was "without proper parental care or control, subsistence, education as required by law, or other care or control necessary for the child's physical, mental, or emotional health or morals." See former OCGA § 15-11-2 (8) (A). But the new definitions refer to a child as "dependent," rather than "deprived," which is a child who, inter alia, "[h]as been abused or neglected and is in need of the protection of the court. . . ." OCGA § 15-11-2 (22) (A). *In the Interest of G. R. B.*, 330 Ga. App. 693, 693-694, n. 1 (769 SE2d 119) (2015). To the extent that there is any conflict between UJCR 11.3 and OCGA § 15-11-110, UJCR 11.3 would not "abrogate or interfere with an otherwise-valid statutory enactment . . . ." *Edwards v. State*, 281 Ga. 108, 110 (636 SE2d 508) (2006).

recognized that OCGA § 15-11-181 (a) required the hearing to be held within ten days of the filing of the petition, and set the new hearing date for November 18, 2015, well beyond the statutorily required date; in doing so, the court stated that the statutory date could not be met because of "numerous matters scheduled for hearings," and described November 18, 2015 as "the next available court date."[18] Although the facts recited in the court's continuance order may well have authorized a continuance to a date within the period set by the statute for a hearing, the only justification the court gave for continuing the hearing almost four weeks in the future was that the reset date was the "next available court date." But, OCGA § 15-11-110 requires more from a court than this; a continuance under OCGA § 15-11-110 is to be granted "only for that period of time shown to be *necessary.*" OCGA § 15-11-110 (b) (Emphasis supplied.) Thus, a court must evaluate what other matters are competing for the court's attention such that the dependency hearing must be continued to the date chosen,

---

[18] On November 5, 2015, the court reset the hearing to November 17, 2015; an e-mail sent to the parties on November 3, 2015 stated that the change was "[d]ue to a court scheduling conflict," but no details regarding that conflict were provided in either the formal notice resetting the hearing, or the earlier e-mail regarding it. And, no order in the record directly addresses the court's grant of a continuance to January 12, 2016. In its order denying the motion to dismiss, the court stated that the hearing was reset from the November 2015 date to January 12, 2016 "due to a contested Superior Court matter"; again, no further detail or analysis is provided. Notice of the January 12, 2016 hearing date was entered on January 5, 2016.

13

including a determination of why those other matters must be afforded a priority over that given the dependency hearing by virtue of OCGA § 15-11-110, and the court must place upon the record those facts justifying the continuance, as found at the time the continuance was granted.[19]    However, the court did not, in any written or recorded order, put forth any showing regarding the other cases on the docket sufficient to show why *this* matter, despite its priority, was reset to November 18, 2015.    As such, the order failed to meet the stringent requirements of OCGA § 15-11-110 (b) for ordering a continuance beyond the statutory period.[20]

OCGA § 15-11-181 (a) states that "[i]f adjudication is not completed within 60 days from the date such child was taken into protective custody, the petition alleging dependency may be dismissed without prejudice."  E. G. M.

---

[19] Although the continuance order states that the court "has considered the need for a prompt resolution of the custody status, the need for a stable environment, and the need to eliminate prolonged temporary placements," factors which OCGA § 15-11-110 (a) directs the court to give substantial weight, nothing in the order, or the record as a whole, indicates why these considerations were outweighed by other matters on the docket.

[20] We are aware that juvenile courts must manage congested dockets, and that hearings other than those on dependency petitions take place in those courts that are also subject to time restrictions. See, e.g., OCGA §§ 15-11-301 (time requirements for hearings on petitions to terminate parental rights); 15-11-403 (regulating continuances of hearings on complaints alleging children are in need of services); and 15-11-478 (addressing continuances of hearings in delinquency proceedings). However, OCGA § 15-11-110 is clear that a continuance of a dependency hearing must be made in compliance with its requirements, and the continuance granted here was not so made.

was taken into protective custody on October 8, 2015, adjudication did not occur until January 12, 2016, which was 96 days later, and the time limit set forth in OCGA § 15-11-181 (a) was not met. In rejecting the parents' arguments in favor of dismissing without prejudice the dependency petition, the juvenile court relied upon the fact that it had continued the dependency hearing on October 22, 2015. But, that continuance order did not meet the requirements of OCGA § 15-11-110, and it was that flawed continuance order that caused the failure to meet the adjudication time limit of OCGA § 15-11-181 (a). The General Assembly has stated that dependency proceedings are to be completed expeditiously, OCGA § 15-11-100 (2), dismissal of a petition without prejudice furthers that goal by imposing a consequence for a failure to meet the statutory time requirements, see *In the Interest of M. D. H.*, 300 Ga. 46, 57 (6) (793 SE2d 49) (2016), and in the circumstances of this case, we must conclude that the juvenile court abused the discretion afforded it under OCGA § 15-11-181 (a) to dismiss the petition without prejudice. Accordingly, the judgment of the Court of Appeals is reversed.

Judgment reversed. Melton, P. J., Benham, Hunstein, Nahmias, Blackwell, Boggs, Peterson, JJ., and Judge Aaron B. Mason concur. Grant, J.,

15

disqualified.

Decided June 29, 2018.

Certiorari to the Court of Appeals of Georgia — 341 Ga. App. 33.

Bray & Johnson, Cory P. DeBord; C. Mark Anderson, for appellants.

Christopher M. Carr, Attorney General, Annette M. Cowart, Shalen S. Nelson, Senior Assistant Attorneys General, Calandra A. Harps, Hope M. Pereira, Assistant Attorneys General, for appellee.