**SECOND DIVISION**
**MILLER, P. J.,**
**MARKLE and LAND, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**June 6, 2024**

# In the Court of Appeals of Georgia

A24A0162. IN THE INTEREST OF I. P. et al. (children).

MARKLE, Judge.

In the second appearance of this case before this Court, the mother of I. P. and K. P. appeals from the juvenile court's order finding the children dependent. On appeal, the mother contends that the juvenile court erred by (1) conducting a hearing when she had not been served with an amended petition; (2) finding that there was clear and convincing evidence to support a dependency finding (3) concluding that the Department of Family and Children Services ("DFCS") had made reasonable efforts to find alternative placement or to eliminate the need for removal under OCGA § 15-11-202; and (4) issuing an order lacking sufficient findings of fact and conclusions of

law. For the reasons that follow, we again vacate the juvenile court's order, and remand the case for further proceedings.

> In an appeal from a dependency adjudication, this Court reviews the evidence in the light most favorable to the juvenile court's judgment to determine whether any rational trier of fact could have found by clear and convincing evidence that the child was dependent. In making such a determination, we neither weigh the evidence nor judge the credibility of the witnesses, but instead defer to the factual findings made by the juvenile court, bearing in mind that the juvenile court's primary responsibility is to consider and protect the welfare of a child whose well-being is threatened.

(Citations and punctuation omitted.) *In the Interest of K. K.*, 364 Ga. App. 82, 83 (874 SE2d 110) (2022).

So viewed, the record shows that, in early April 2022, DFCS received a referral regarding then-two-year-old I. P. and then-eight-year-old K. P. When the DFCS investigator visited the mother's home, the mother behaved erratically, ultimately barricading herself in a room. The children, who were present at the time, were frightened and crying. The investigator called police, and the mother was ultimately involuntarily hospitalized.

DFCS filed a petition for dependency, alleging that the mother had a history of unresolved mental health issues and had been involuntarily hospitalized. Upon the mother's discharge from the hospital, she was arrested on unrelated charges.

Three days after the initial petition was served on the mother, DFCS filed an amended dependency petition to add allegations of unresolved criminal issues. Nothing in the record shows that the amended petition was served on either the mother or her counsel.

At the dependency hearing, the mother testified, but was frequently belligerent and refused to answer questions. She denied having any mental health issues, but she admitted that she experienced homelessness at various times, and she acknowledged that she was currently incarcerated and unemployed. When asked about her incarceration, the mother's counsel objected because the mother had not been served with the amended petition. The DFCS investigator testified as to her initial encounter with the mother, in which the mother behaved erratically and was involuntarily hospitalized. The DFCS case manager testified that the mother did not know how long she would be incarcerated, and she confirmed that the mother denied receiving any mental health treatment. Although she stated that there were medical records

from several hospitals, those records were not admitted into evidence because DFCS failed to provide those records prior to the hearing, as required by the juvenile court's standing order.

The juvenile court found the children dependent due to the mother's unresolved mental health issues. On appeal, we vacated the order and remanded the case because the juvenile court failed to make a finding that the mother was unfit. See Case No. A23A0604 ___ Ga. App. ___ (decided June 23, 2023; see also *In the Interest of T. Y.*, 350 Ga. App. 553, 560 (1) (829 SE2d 808) (2019).

On remand, the juvenile court again found the children were dependent due to abuse and neglect, based on the mother's unresolved mental health issues and current incarceration. The court noted the mother's behavior during the hearing, as well as her incarceration, unemployment, and housing instability. The juvenile court also explained that the mother was unfit due to her refusal to obtain treatment for her on-going mental health issues. The juvenile court further found that DFCS had made reasonable efforts to avoid removal or find alternative placement. Accordingly, the juvenile court placed the children in the temporary custody of DFCS. The mother again appeals.

Under our Juvenile Code,

> the juvenile court may place a minor child in the protective custody of DFCS where the State shows, by clear and convincing evidence, that the child is a dependent child . . . . Pursuant to OCGA § 15-11-2 (22), a dependent child is defined as "a child who: (A) Has been abused or neglected and is in need of the protection of the court; (B) Has been placed for care or adoption in violation of law; or (C) Is without his or her parent, guardian, or legal custodian." But even after finding a child to be dependent, a juvenile court can only remove a child from a parent's custody if it finds that the dependency resulted from unfitness on the part of the parent, that is, either intentional or unintentional misconduct resulting in the abuse or neglect of the child or by what is tantamount to physical or mental incapability to care for the child. And proof of unfitness must be shown by clear and convincing evidence.

(Citations and punctuation omitted.) *In the Interest of K. K.*, 364 Ga. App. at 83-84. With this standard in mind, we turn to the mother's arguments on appeal.

1. The mother first argues that the juvenile court violated her due process rights because the amended dependency petition was never served on her prior to the dependency hearing. She notes that, when she raised the lack of service as an issue, the juvenile court mistakenly believed DFCS was not required to serve an amended petition and that her objection was to the relevance of the incarceration. We agree.

While a case is pending, DFCS may amended its dependency petition to include additional allegations. OCGA § 15-11-153 (a) (2). Any such amendment "shall be served on the parties and provided to the attorneys of record." OCGA § 15-11-153 (b).

DFCS contends that service on the mother's attorney was sufficient because it complied with the Civil Practice Act. We cannot agree for two reasons. First, there is no evidence of any service in the record. Second, although the provisions of the Civil Practice Act generally apply to juvenile proceedings, the Civil Practice Act does not apply where, as here, the Juvenile Code provides its own procedures. OCGA § 15-11-4; see also *In the Interest of C. B.*, 369 Ga. App. 440, 444-445 (1) (893 SE2d 828) (2023); compare OCGA § 9-11-5 (a), (b) (permitting service of amended pleadings on the party's attorney).

The Juvenile Code specifies that an amended petition "shall" be served *on the party and provided to the attorney*. OCGA § 15-11-153 (b). As with any statutory interpretation, we consider the plain meaning of this statutory language, reading it "in the most natural and reasonable way, as an ordinary speaker of the English language would, and seek to avoid a construction that makes some language mere surplusage." (Citations and punctuation omitted.) *In the Interest of L. T.*, 325 Ga. App. 590, 591-592

(754 SE2d 380) (2014). As we have explained, "[t]he general rule is that 'shall' is recognized as a command, and is mandatory, and we cannot by construction add to, take from, or vary the meaning of unambiguous words in a statute." (Citations and punctuation omitted.) *City of Albany v. GAHY Imports*, 348 Ga. App. 885, 891 (1) (825 SE2d 385) (2019).

Thus, when we give the language its plain meaning, cognizant of the fact that "shall" denotes mandatory conduct, we must conclude that the Civil Practice Act does not circumvent the statutory requirement that the mother be served with any amended petition under the Juvenile Code. See *In the Interest of D. C.*, 364 Ga. App. 86, 90-92 (1) (874 SE2d 114) (2022) (DFCS failed to meet statutory requirements when it did not serve father with copy of case plan).

Finally, we cannot say, on this record, that the failure to serve the mother with the amended petition was harmless.

> [F]reedom of personal choice in matters of family life is a fundamental liberty interest, protected by the United States Constitution, and that the right to the custody and control of one's child is a fiercely guarded right in our society and in our law. It is a right that should be infringed upon only under the most compelling circumstances. The fundamental idea of due process is notice and an opportunity to be heard. As parties to a

7

deprivation hearing, parents are entitled to notice and an adequate opportunity to be heard. However, unless the mother can establish that she was harmed by the alleged due process violation, reversal is not required.

(Citations and punctuation omitted.) *In the Interest of D. T.*, 284 Ga. App. 336, 341 (3) (643 SE2d 842) (2007); see also *In the Interest of R. B.*, 346 Ga. App. 564, 575 (816 SE2d 706) (2018) (Dillard, P. J. concurring fully and specially) ("The State also argues that any error . . . was harmless because the mother ultimately had a full and fair opportunity to contest the order. But given the gravity of the constitutional rights at stake and the length of time the mother involuntarily spent away from her children, I find this argument as offensive as it is unavailing."). As we have explained, "wresting a child away from the care and custody of [his or her] parents is of serious consequence. It is so drastic that it should be attended only by the most stringent procedural safeguards." (Citation omitted.) *In the Interest of R. B.*, 346 Ga. App. at 570 (2); compare *In the Interest of E. G. M.*, 341 Ga. App. 33, 53 (3) (798 SE2d 639) (2017) (no harm from failure to timely give parents care plan), overruled on other grounds by, *In the Interest of I. L. M.*, 304 Ga. 114 (816 SE2d 620) (2018); *In the Interest of A. S. R. H.*, 265 Ga. App. 30, 34 (4) (593 SE2d 59) (2004) (harmless error where amended

petition, which was not served on parent, only added grandmother's name, and the juvenile court stated it would not consider issues not listed in initial petition).

Here, DFCS failed to adhere to the procedural safeguards. The amended petition specified the mother's incarceration as a basis for finding the children dependent. And, although the juvenile court stated that it was not basing its findings on the mother's incarceration, the written order clearly references it as part of its finding that the children were dependent. In addition, we note the slim evidence presented at the dependency hearing that might otherwise support the juvenile court's order. There were no medical records and no testimony from any medical personnel to establish the mother's mental health issues, in part because the records were excluded due to DFCS's failure to timely notify the mother of their use. There was also no evidence regarding the children's condition, other than the mother's testimony that she would leave the children with family when she was experiencing housing instability, and no evidence as to how long the mother would remain in jail, other than the mother's testimony that the court had set bail and she would be released once it was paid. In light of this limited record, and the language in the

9

juvenile court's order, we cannot say the failure to serve the mother with the amended petition was harmless. *In the Interest of R. B.*, 346 Ga. App. at 570 (2).

2. Because we must vacate the juvenile court's order and remand the case for the second time, we do not reach the mother's remaining enumerations of error.

*Judgment vacated and case remanded. Miller, P. J., and Land, J., concur.*